A. Schuyler Montgomery et al. v. The Muskegon Booming Company.

*Negligence—Setting fires—Operation of steam craft—Pleading.*

1. While negligence in providing proper means for the prevention of fires and in the management of the apparatus and fires may be inferred from the size and quantity of sparks or cinders emitted, when those things are shown, it will not in any case be presumed from the mere fact of a fire, where the testimony as to its cause is purely circumstantial.

2. Negligence in the conduct of a steam-tug is the failure to use the care ordinarily used by careful men; and, it being well known that the escape of sparks cannot be absolutely prevented by the use of any appliance yet invented, the owner cannot be held responsible upon the ground of negligence for not doing what it is practically impossible to do; citing *Railroad Co. v. Burrows*, 33 Mich. 6; *Batterson v. Railway Co.*, 49 Id. 184.

3. Science has as yet been able to reduce the danger in the use of steam as a motive power to the minimum only; and when a party so using it has availed himself of the means generally used for the protection of property, he cannot be held liable because such means are not always effective or adequate.

4. An allegation in a declaration in a negligence case that defendant willfully left the spark-arrester of his steam-tug open, and thereby allowed sparks to escape and be carried by the wind upon plaintiffs' docks, and set fire to them, implies that the act was done with a set purpose to accomplish the results which followed, and involves more than . negligence, and implies malice.

5. It is a matter of common knowledge that draught is essential to the operation of a steam craft; that so far it has been found practically impossible to arrest the emission of all sparks, and at the same time preserve the necessary draught; that sparks will escape, and fires will occasionally occur; and it is only when the want of ordinary care is shown in the selection, care, and operation of appliances or in the management of fires on such craft, or where the absence of proper appliances or neglect in their management or in the management of the

fires can be inferred from peculiar circumstances, that the owners and operators of such craft can be made liable.

Error to Muskegon. (Dickerman, J.) Argued October 30, 1891. Decided December 21, 1891.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*L. N. Keating* and *Smith, Nims, Hoyt & Erwin* (*E. F. Uhl*, of counsel), for appellant, contended:

1. Actions for negligence are based upon two propositions:

   *a*—Negligence cannot be presumed, but must be proved affirmatively.

   *b*—A declaration for negligent injury must aver the fact and manner of negligence, and the plaintiff should be confined to its allegations.

   The objects of these rules are:

   *a*—To inform the court what the plaintiff claims and expects to prove.

   *b*—To give the defendant an opportunity to learn what the plaintiff claims he has been negligent in, and to prepare his defense.

   —Citing *Railroad Co. v. Marcott*, 41 Mich. 433; *Railway Co. v. Stark*, 38 Id. 714; *Railroad Co. v. Shanefelt*, 47 Ill. 497; *Lund v. Tyngsboro*, 11 Cush. 563; *Shaw v. Railroad Co.*, 8 Gray, 45; *Parker v. Railroad Co.*, 16 Barb. 315; *Max v. Roberts*, 12 East, 89; *Rex v. Everett*, 8 Barn. & C. 114.

2. It was error to permit plaintiffs' counsel, in his argument to the jury, to state that the "defendant is an association of individuals which has a grip upon the business of every lumberman which is on this river or on this lake. That corporation can crush any single mill-owner, if the law will permit it, who excites its animosity, to whom it can say, 'We shall deliver you no more logs;'"—said statements being entirely unsupported by any evidence in the case; citing *Seligman v. Ten Eyck Estate*, 60 Mich. 267; *Bedford v. Penny*, 58 Id. 428.

3. The plaintiffs had contract relations with the defendant, by which it was delivering logs at plaintiffs' mill, and in pursuit of its business was at plaintiffs' dock. Where a party invites another to enter into a contract, and the invited party has to use steam-power, there can be no liability for fire caused by

its use if the doctrine of *Railroad Co. v. Spear*, 44 Mich. 169,. applies to this case.

4. One authorized to use steam-power is not liable for injuries unavoidably produced by a fire, unless the plaintiff shows that such fire was caused by negligence, and he has the burden of proof to establish such fact. The user of steam-power is not obliged absolutely to prevent the escape of sparks, but is simply obliged to use machinery that other people doing the same kind of business use who are considered careful, cautious persons; citing *Read v. Morse*, 34 Wis. 315; *Butcher v. Railroad Co.*, 67 Cal. 518; Shear. & R. Neg. § 668.

*Bunker & Carpenter*, for plaintiffs, contended:

1. If it were necessary to give direct evidence by those who saw the fire communicate from the tug to the dock, the point made that there was no testimony to go to the jury would be well taken; but such is not the rule. The fact may be shown by any circumstances tending to prove it; citing *Hoyt v. Jeffers*, 30 Mich. 181, 189; *Alpern v. Churchill*, 53 Id. 607.

2. Many a case has been held properly submitted to the jury where the plaintiff's testimony was much weaker; citing *Hoyt v. Jeffers*, 30 Mich. 181; *Marcott v. Railroad Co.*, 47 Id. 1; *Alpern v. Churchill*, 53 Id. 607; *Jones v. Railroad Co.*, 59 Id. 437; *Witheral v. Booming Co.*, 68 Id. 48, 51; *Hayes v. Railroad Co.*, 111 U. S. 228, 242; *Wilson v. Railroad Co.*, 43 Minn. 519; *Nichols v. Railway Co.*, 36 Id. 452; *Field v. Railroad Co.*, 32 N. Y. 339; *Webb v. Railroad Co.*, 49 Id. 420; *Briggs v. Railroad Co.*, 72 Id. 26; *Kelsey v. Railway Co.* (S. D.), 45 N. W. Rep. 204; *Mills v. Railway Co.*, 76 Wis. 422; *Hoffman v. Railway Co.*, 43 Minn. 334; *Beggs v. Railroad Co.*, 75 Wis. 444; *Johnson v. Railway Co.*, 77 Iowa, 666; *Dean v. Railway Co.*, 39 Minn. 413; *Karsen v. Railway Co.*, 29 Id. 12; *Railway Co. v. Ayers* (Tex.), 8 S. W. Rep. 538; and all that is required of the plaintiff is to establish by evidence circumstances from which it may fairly be inferred that there is reasonable probability that the accident resulted from the want of some precaution which the defendant might and ought to have resorted to; citing *Hayes v. Railroad Co.*, 111 U. S. 228.

3. In the fourth and eighth counts the use of slabs as fuel around and near the docks and lumber is set up as an act of negligence. The use of any particular kind of fuel could not be in itself an act of negligence independent of other circumstances, but in connection with them it might constitute an act of gross negligence. The testimony. in regard to the change of fuel from slabs to coal was proper for the purpose of showing that coal could be used and was used on this same boat as.

fuel without danger to adjacent property. It tended strongly to sustain the plaintiffs' claim that, under the circumstances in this case, the defendant was negligent. It was on the same footing as the testimony in *Alpern v. Churchill*, 53 Mich. 607, where the Court held that the plaintiff should have been allowed to show that the spark-arrester on the mill-burner when the fire occurred had been replaced after the fire by a new one, which did not allow the escape of sparks.

4. There was no error in refusing to compel plaintiffs to elect before the trial on which count of the declaration they would rely; citing *Cook v. Perry*, 43 Mich. 623.

5. The following questions: "Did you ever know of the McGraft throwing sparks?" "Is she in the habit of throwing sparks?" "Did she throw off sparks while you were on her?"—were proper; citing *Hoyt v. Jeffers*, 30 Mich. 181; *Alpern v. Churchill*, 53 Id. 607; *Kendrick v. Towle*, 60 Id. 363; *Sheldon v. Railroad Co.*, 14 N. Y. 218; *Field v. Railroad Co.*, 32 Id. 339; *Webb v. Railroad Co.*, 49 Id. 420; and it is said of railroad engines that it is a matter of common knowledge that they do emit sparks which start fires; citing *Karsen v. Railway Co.*, 29 Minn. 12; and the same is true of steamboats, and especially of tugs that have powerful engines and strong draughts; citing *Kendrick v. Towle*, 60 Mich. 363.

6. The court was not requested to rule on the propriety of the alleged objectional argument to the jury, nor to correct its impropriety, if any existed, by a proper instruction to the jury, nor to correct the counsel and define any bounds to his argument, and therefore the Court cannot review the question; citing *Mayo v. Wright*, 63 Mich. 32; *Manufacturing Co. v. Car Co.*, 65 Id. 564; and the fact that the remarks complained of were made in reply to argument of defendant's counsel is sufficient reply to the claim of error; citing *Miner v. Lorman*, 66 Mich. 532.

7. The court properly defined negligence in the sense used in this case to be "the failure to observe for the protection of the interest of another person that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury;" citing *Railway Co. v. Stark*, 38 Mich. 717; *Brown v. Railway Co.*, 49 Id. 153; *Kendrick v. Towle*, 60 Id. 367,

*Uhl & Crane,* of counsel, for appellant, contended in reply:

1. The counts in the declaration are inconsistent, and so repugnant that they cannot stand together, and the plaintiffs should have

been compelled to elect between them; citing *Ives v. Williams*, 53 Mich. 636.

2. Direct and positive proof that the fire was occasioned by a spark thrown out of the smoke-stack of the defendant's tug would not be *prima facie* evidence of negligence on its part; citing *Bachelder v. Heagan*, 18 Me. 32; *Burroughs v. Railroad Co.*, 15 Conn. 124; *Rood v. Railroad Co.*, 18 Barb. 80; *Smith v. Railroad Co.*, 37 Mo. 287; *Gandy v. Railroad Co.*, 30 Iowa, 420; *Ruffner v. Railroad Co.*, 34 Ohio St. 96; *Jennings v. Railroad Co.*, 93 Penn. St. 337; *Railroad Co. v. Lalshaw*, Id. 449.

3. The plaintiffs, having employed the defendant to come to their docks with steam-tugs upon their business, have no right to complain of negligence on the part of the defendant; citing *Railroad Co. v. Spear*, 44 Mich. 169.

4. Proof of previous negligent acts on the part of the engineer who was on the tug during the day on which the fire occurred would not be competent, unless the plaintiffs proved that he was negligent at or about the time the fire broke out; citing *Thompson v. Railway Co.*, 84 Mich. 281.

5. The instruction that the counsel for plaintiffs had a right to comment on the fact that the defendant gave no testimony on the trial was error; citing *Moore v. Wright*, 90 Ill. 470; *Association v. George*, 97 Penn. St. 238; *Flynn v. Railroad Co.*, 18 Jones & S. 375; *Anderson v. Russell*, 34 Mich. 109.

6. In support of the proposition that recovery could not be had under any count of the declaration, counsel reviewed the testimony in connection with each count.

McGRATH, J. A fire occurred on plaintiffs' lumber docks, which consumed certain tramways and docks and a large quantity of lumber. This suit is brought to recover the value of the property destroyed, upon the theory that the fire was occasioned by a spark from one of defendant's tugs by reason of defendant's negligence. Under the testimony the court should have directed a verdict for defendant.

The declaration contained eight counts, alleging negligence as follows:

1. That defendant "failed to supply the tug with a spark-arrester on its smoke-stack, or with any other

appliance or device sufficient to prevent the escape of sparks, burning cinders, and brands from its smoke-stack, and without using any adequate means to prevent the escape of sparks and burning cinders and brands as aforesaid."

2. That the tug was "provided with a spark-arrester in its smoke-stack, so constructed that it could be opened or closed, as might be desired, increasing the draught when open, but at the same time allowing the sparks and burning cinders and brands to escape from the smoke-stack; and on, to wit, the 19th day of July, 1888, while said defendant was using said tug in the operation of its business at and near the plaintiffs' docks and tramways, it willfully, carelessly, and negligently left said spark-arrester open a long time, to wit, for thirty minutes."

3. That the spark-arrester was not sufficient to prevent the escape of sparks, and by reason of the defective condition of said spark-arrester.

4. That defendant used slabs made of pine, hemlock, and other woods, which, while burning, formed and threw off sparks, without taking any precautions to prevent the escape of sparks.

5. That, "while the said tug was lying at and near the said docks and tramways of the plaintiffs, the said defendant willfully, carelessly, and negligently opened the furnace door of said tug, and left the same open for a long time, to wit, for the space of five minutes, at a time when the wind was blowing violently in a direction from said tug towards said docks, tramways, bottoms, and lumber of the plaintiffs, and thereby wrongfully, carelessly, and negligently largely increased the draught through the furnace and smoke-stack of the said tug, and caused a large number of sparks and burning cinders and brands to be thrown from said smoke-stack, and the same were blown and carried by the wind upon and against docks, tramways, bottoms, and lumber, and set fire to and ignited the same."

6. That while said tug was lying at plaintiffs' docks the defendant "willfully, carelessly, negligently, and wrongfully turned its exhaust steam into and through its smoke-stack, thereby largely increasing the draught through said smoke-stack, and causing the same to emit and pour forth a large number of sparks and burning cinders and brands at a time when the wind was blowing violently in a direction from said tug towards said docks, tram-

ways, bottoms, and lumber; and by reason thereof said sparks and burning cinders and brands were blown upon and against said docks."

7. That "said tug was so constructed that when in motion, and when the fire was burning in its furnace, a large number of sparks and burning cinders and brands were from time to time emitted from its smoke-stack, and were at times carried by the wind, maintaining their vitality so as to be able to ignite such combustible material as they should come in contact with; yet the defendant, well knowing the character and condition of said tug, and its liability to emit sparks and burning cinders and brands, on, to wit, the 19th day of July, 1888, when the wind was blowing violently, did willfully, carelessly, negligently, and wrongfully run said tug up to and near the docks, tramways, bottoms, and lumber of said plaintiffs, and kept it there in such a position that the wind was blowing from said tug in a direction towards said docks, tramways, bottoms, and lumber, and while said tug was so placed kept the fire in its furnace burning."

8. That it "was the duty of the said defendant to use such appliances on its said tugs, and employ such means in operating them, as would not endanger the safety of the mills, docks, and lumber on said Muskegon lake and river, and would not subject them to any needless risk and danger from fire; and it also became and was the duty of the said defendant to take extraordinary precautions in times of high wind in the management of its said tugs, so as not to endanger said mills, docks, tramways, and lumber, or to subject them to any risk of taking fire from said tugs; yet the said defendant, not regarding its said duty, but contriving and intending to injure the said plaintiffs, would not and did not use proper appliances on its tugs, and would not and did not employ such means as would not endanger the safety of the mills, docks, and lumber on said Muskegon lake and river, and would not subject them to risk and danger from fire, but, on the contrary,   *   *   *   failed and neglected to supply its said tugs with proper spark-arresters or other proper or suitable device for preventing the escape of sparks and burning cinders and brands from said tugs, and has failed, neglected, and refused to employ proper means in operating said tugs in this, to wit: that it has continuously, persistently, carelessly,

negligently, and wrongfully used and employed on said tugs, as fuel for general steam use therein, pine, hemlock, and other slabs, which are utterly unfit for said purpose, as they make and cause large quantities of light sparks and burning cinders and brands to be thrown off, capable of being carried long distances by the wind before they are extinguished, and seriously endangering the safety of the docks, lumber, and mills on said lake and river; and on, to wit, the 19th day of July, 1888, the said defendant, still disregarding its said duty, but contriving and intending to injure the plaintiffs, while a very high wind was blowing, carelessly, negligently, and wrongfully moved one of its said tugs, which it had failed to supply with a spark-arrester or other suitable device for preventing the escape of sparks and burning cinders and brands, in which it was then burning as fuel pine, hemlock, and other slabs, up to and against certain other docks, tramways, bottoms, and lumber."

The testimony as to the fire cause was circumstantial. Plaintiffs' mill was located about 850 feet southerly from their dock line. There were three other mills in the same locality,—the McGraft mill, situated 1,000 feet northeast from the point where the fire took; the Blodgett mill, located about 875 feet west-south-west; and the Shippey mill, which was about 1,200 feet distant in a southerly direction. Each of these mills had large refuse burners attached, and several fires had been caused by fires from these burners. The wind was blowing fresh from the north-west, and the tug passed the docks about 15 minutes before the fire was noticed. No sparks were seen coming from the tug, although she was seen to pass by several witnesses. There was no testimony tending to show that the tug had before that time set any fires; on the contrary, it was shown that she had not.

While negligence in providing proper means for the prevention of fires and in the management of the apparatus and fires might be inferred from the size and quantity of sparks or cinders emitted, when those things are shown, negligence will not in any case be presumed from

the mere fact of a fire, when the testimony as to the cause of the fire is purely circumstantial.

The defendant had business with the plaintiffs, and the tug was in the vicinity of plaintiffs' docks in the course of that business. The testimony clearly showed that the smoke-stack of said tug was supplied with a spark-arrester. There was no testimony tending to show that the spark-arrester was defective, or that it was not regarded as sufficient, or that it was not of the kind ordinarily used for that purpose, or that it was not as efficient as any other apparatus, or that it was not operated, or that the furnace door had been opened or left open for any time, or that the construction of the fire apparatus or smoke-stack of said tug was defective, or that defendant was not taking the ordinary precautions to prevent the escape of sparks, or that any other or more efficient apparatus or means to prevent the escape of sparks were in use by others. The proofs showed that defendant used slabs for fuel, but there was no testimony tending to show that the use of slabs for fuel was unusual in that locality.

It is alleged that defendant did not use adequate means to prevent the escape of sparks; but, as already said, it was shown that a spark-arrester was provided and in use. Negligence is the want of ordinary care. Negligence in the conduct of a tug is the failure to use the care ordinarily used by careful men. It is well known that the escape of sparks cannot be absolutely prevented by the use of any appliance yet invented. Defendant cannot be held responsible upon the ground of negligence for not doing what it is practically impossible to do. *Michigan Central R. R. Co. v. Burrows,* 33 Mich. 6; *Batterson v. Railway Co.,* 49 Id. 184. Science has as yet been able to reduce the danger in the use of steam as a motive power

88 Mich.—41.

to the minimum only; and when a party using steam has availed himself of the means used generally for the protection of property, he cannot be held liable because the means are not always effective or adequate. He is only liable when he neglects to use or carelessly and negligently uses those appliances which science and ingenuity have invented to reduce the probabilities of fire.

The testimony was speculative and conjectural. The only testimony having the slightest bearing upon the allegation that the furnace door was open or left open was that of the engineer who subsequently operated the tug, who, speaking with reference to tugs generally, said that, if the damper and furnace door were closed, and the exhaust on the outside, no sparks would be thrown out, because there would be no draught. But the declaration does not charge as negligence an open damper, nor does it appear that the tug could be operated without any draught. The same witness was asked, "What was the character of that tug for throwing off sparks?" and replied: "Well, she was like all other small boats with small boilers. If the engine—if you are crowding her—she has got to throw sparks." There was no testimony that she was being crowded at plaintiffs' docks. He was then asked,—

"Q. Did she throw off sparks while you were on her?
"A. She would throw off sparks, of course, according to the way you fired her,—according to the distance. If you put in a fire to Blodgett & Byrne's, and run as far as Hackley's, or run as far as Hamilton's, and not put in any fire, and you jar against a dock, no matter whether the exhaust is in or out, she will throw fire, providing they don't put in any fresh fire.    *    *    *
"Q. Are sparks apt to be thrown when she stops and starts?
"A. Well, not when she stops. When she is backing up, if you run up to a dock at a nice little gait,—that

is the way they express themselves (tug-men), a nice little gait,—if you run pretty fast up to a dock, and you stop and back up, whether the exhaust is in or out, it don't make any difference, she will throw sparks just the same.

"*Q.* What is the effect when the exhaust is in the stack?

"*A.* The effect is, she throws it further, harder, and more fire.

"*Q.* What kind of sparks will she throw when the exhaust is in?

"*A.* When the exhaust is in? According to the fire. If you have got a green fire, she won't throw as many sparks as if you run your fire off five minutes. She will throw more sparks when you run your fire five minutes than a green fire. A green fire is a fire of fresh slabs or any kind of wood."

On cross-examination the witness was asked:

"You said something about this particular boat throwing sparks in case she run up and hit a dock?

"*A.* Nothing about a particular boat. I said any boat.

"*Q.* They are all alike in that respect?

"*A.* Well, they are all alike of those burning wood."

There was no testimony tending to show that the tug touched or jarred the dock; none that any fuel had or had not been put in; none that she was run up to the dock at a nice little gait, or pretty fast; and none that the exhaust was in the stack. The testimony was that she ran up slowly to within 8 or 10 feet of the dock, and one of the men on board handed an oar to an employé who was engaged in booming logs at that point. There was the testimony of one witness that she backed a little, to get out, after the oar was delivered; but none that it was carelessly or unnecessarily done, or with the spark-arrester open. One witness, who had been a fireman on the tug, was asked if he ever knew the tug to throw sparks, and he answered, "Yes." He was then asked if she was "in the habit of throwing sparks," and

answered, "Yes;" but no time, place, or conditions were asked for or given. It was not shown whether the arrester was in use at the time, or at what rate of speed she was going, or where she was at the time or times.

The use of the word "willfully" in the 2d, 5th, 6th, and 7th counts involves design and purpose. The allegation that defendant willfully left the spark-arrester open, and thereby allowed sparks to escape and be carried by the wind upon plaintiffs' docks, and set fire to them, implies that the act was done with a set purpose to accomplish the results which followed the act. It involves more than negligence; it implies malice. The word has no office in the count unless given its ordinary acceptation. There could be no recovery under the evidence upon these counts.

It was held in *Alpern v. Churchill,* 53 Mich. 607, that—

"Negligence implies fault, and cannot be predicated of a lawful and customary use of one's own premises."

Neither can it be predicated of a lawful and customary use of a water-way. As was said in *Michigan Central R. R. Co. v. Coleman,* 28 Mich. 440:

"The degree of care required in any business must be proportionate to its nature and risks; but the law does not require business to be conducted upon any unusual basis, though the business be one of great risks, and requiring great caution. All rules applied must be reasonable, and not oppressive, and must be applied with reference to the ordinary conduct of affairs."

It is a matter of common knowledge that draught is essential to the operation of a steam craft; that so far it has been found practically impossible to arrest all sparks and at the same time preserve the necessary draught; that sparks will escape, and fires will occasionally occur; and it is only when the want of ordinary care is shown in the selection, care, and operation of appliances or in the management of fires on such craft, or where the

absence of proper appliances or neglect in their management or in the management of the fires can be inferred from peculiar circumstances, that those owning and operating such craft can be made liable.

The defendant is entitled to a verdict upon this record, and the judgment is therefore reversed, and a new trial ordered, with costs of both courts to defendant.

The other Justices concurred.