MALCOLM v CITY OF EAST DETROIT

Docket No. 107182. Submitted May 8, 1989, at Detroit. Decided
    October 17, 1989.

On May 12, 1984, William Malcolm collapsed due to an apparent
    heart attack. His wife, Cynthia, called the City of East Detroit's
    Emergency Medical Services, which dispatched two fire fighters
    to the Malcolms' residence. Neither of the fire fighters was
    certified as an emergency medical technician. They arrived on
    the scene at 6:12 P.M., approximately two minutes after the call
    came in. They began administering cardiopulmonary resuscita-
    tion and using an ambu-bag to pump air into Malcolm's lungs.
    Malcolm vomited into the ambu-bag. Ignoring a request by
    Malcolm's son that they clear Malcolm's mouth and the ambu-
    bag of vomit, the fire fighters continued to pump the ambu-bag.
    The vomit eventually disappeared, presumably back into Mal-
    colm. At 6:16 P.M., Joseph Croff, an emergency medical techni-
    cian, arrived on the scene, but failed to bring with him oxygen
    or other equipment. Croff determined that Malcolm should be
    transported to a hospital. Malcolm arrived at Harper Grace
    Hospital at 6:21 P.M. and it was determined that he lacked a
    regular rhythmic heartbeat. The emergency room personnel
    defibrillated Malcolm's heart seven times before it finally re-
    sponded, at 6:47 P.M. Malcolm survived but suffered severe
    brain damage due to lack of oxygen during his treatment.
    Malcolm and his wife filed a personal injury action against the
    City of East Detroit, Joseph Croff, and others in Wayne Circuit
    Court. The court, Marvin R. Stempien, J., granted summary
    disposition in favor of the city as to plaintiffs' negligence
    claims, but denied it as to the city's liability for wilful and
    wanton misconduct, and granted a directed verdict in favor of
    defendant Croff. Following trial, the jury returned a verdict in
    favor of plaintiffs against the City of East Detroit. Plaintiffs
    were found to have no cause of action against the remaining
    defendants. The jury found misconduct on the part of the city

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
    §§ 186, 200; Trial § 1154.
See the Index to Annotations under Emergencies; Governmental
    Immunity or Privilege; Intentional, Wilful, and Wanton Acts.

and found that the misconduct was both wilful and wanton, but that the misconduct was not the proximate cause of Malcolm's injuries. Following reinstruction by the court, the jury found that the city's misconduct was the proximate cause of Malcolm's injuries. Judgment was entered, and the city's motion for judgment notwithstanding the verdict was denied. The city appealed. Plaintiffs cross appealed, challenging the trial court's order granting a directed verdict in favor of defendant Croff.

The Court of Appeals *held:*

1. The trial court did not err in holding that the city was not entitled to governmental immunity. The emergency medical services act provides a limited statutory exception to governmental immunity where the act or omission at issue was the result of gross negligence or wilful misconduct. The evidence established wilful and wanton misconduct on the part of the city and that the city's conduct was the proximate cause of Malcolm's injuries.

2. The trial court did not err in reinstructing the jury when it returned a contradictory verdict.

3. The trial court properly granted a directed verdict in favor of defendant Croff. There was no evidence to indicate that his conduct was wilful or wanton.

4. The trial court did not err in holding that defendants were not guilty of gross negligence. For a gross negligence claim to be actionable, it must allege that the defendant's negligent conduct occurred subsequent to some negligent conduct on the part of the plaintiff. Plaintiffs did not allege that defendants' negligence was subsequent to any negligent acts on their part.

5. Plaintiffs' argument that the concept of gross negligence can be defined as an extreme departure from ordinary care or a severe degree of negligence was rejected. The concept of gross negligence requires the existence of precedent negligence on the part of the plaintiff.

Affirmed.

1. GOVERNMENTAL IMMUNITY — EMERGENCY MEDICAL SERVICES — GROSS NEGLIGENCE — WILFUL MISCONDUCT.

The emergency medical services act sets forth a statutory exception to governmental immunity where the act or omission at issue was the result of gross negligence or wilful misconduct (MCL 333.20737; MSA 14.15[20737]).

2. NEGLIGENCE — WILFUL AND WANTON MISCONDUCT.

Wilful and wanton misconduct requires: (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm

by ordinary care and diligence in the use of the means at hand; and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

3. NEGLIGENCE — WILFUL AND WANTON MISCONDUCT.
   Wilful and wanton misconduct is made out only if the conduct alleged shows an intent to harm, or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does; wilful and wanton misconduct is not a high degree of carelessness.

4. TRIAL — INCONSISTENT VERDICTS — REINSTRUCTION OF JURY.
   A court must either reinstruct the jury or order a new trial when a verdict is inconsistent or contains a remedy not authorized by law.

5. NEGLIGENCE — GROSS NEGLIGENCE.
   The concept of gross negligence requires that the defendant's negligent conduct occur subsequent to some negligent conduct on the part of the plaintiff.

*Eric J. McCann, P.C.* (by *Eric J. McCann*), for plaintiffs.

*Cummings, McClorey, Davis & Acho, P.C.* (by *T. Joseph Seward* and *Marcia L. Howe*), for defendants.

Before: CYNAR, P.J., and BRENNAN and MARILYN KELLY, JJ.

PER CURIAM. Defendant, City of East Detroit, appeals as of right from the jury award of $500,000 in favor of plaintiffs and the trial court's denial of its motions for summary disposition, a directed verdict and judgment notwithstanding the verdict. Plaintiffs cross appeal from the trial court's order granting a directed verdict in favor of codefendant Joseph Croff. We affirm.

On May 12, 1984, while having dinner, plaintiff William Malcolm collapsed due to an apparent

heart attack. In response to a call from plaintiff's wife, Cynthia Malcolm, the city's Emergency Medical Services dispatched two fire fighters, Arthur Klawender and Shelly Moen, neither of whom was certified as an emergency medical technician.

Upon arrival at the Malcolm home, defendant Klawender checked plaintiff for a pulse and then checked to be sure his airway was clear. While Klawender began to administer CPR, defendant Moen called for additional assistance. When Moen returned, he took over the administration of CPR, while Klawender used an ambu-bag to pump air into plaintiff's lungs. Shortly after the ambu-bag was placed on plaintiff's mouth, he vomited. The fire fighters ignored a request by plaintiff's son to clear plaintiff's mouth and the ambu-bag of vomit and continued to pump the ambu-bag. Eventually the vomit disappeared, presumably back into the plaintiff.

At approximately 6:16 P.M., about four minutes after Moen's call for assistance, Joseph Croff, an emergency medical technician, arrived on the scene. Defendant Croff did not bring oxygen or any other equipment with him. When he was unable to find a pulse, Croff decided that the plaintiff should be transported to the hospital.

Plaintiff arrived at the hospital at approximately 6:21 P.M., where he was found to be in ventricular fibrillation, meaning he lacked a regular rhythmic heartbeat. In order to reestablish a regular sinus rhythm, the emergency room personnel defibrillated the plaintiff's heart seven times before it responded, approximately twenty minutes after he arrived. Due to the lack of oxygen, plaintiff suffered severe brain damage.

On November 26, 1984, plaintiffs filed suit against defendants Harper Grace Hospital, emergency room doctors John Stone and Banda Reddy,

City of East Detroit, and fire fighters Klawender, Moen and Croff. By order dated August 19, 1985, the trial court granted summary disposition as to the defendant city concerning plaintiffs' simple negligence claims.

By order dated March 6, 1986, the trial court denied defendants' motion for summary disposition on plaintiffs' gross negligence claim. On January 13, 20, and 29, 1987, plaintiffs stipulated to the dismissals of the hospital and Drs. Reddy and Stone from the suit.

On August 17, 1987, the trial court granted defendants' renewed motion for summary disposition as to the city, pursuant to MCR 2.116(C)(10), finding no genuine issue of material fact to support plaintiffs' claim of gross negligence. However, the court denied the motion as it pertained to the individual defendants and the city's liability for wilful and wanton misconduct. Reconsideration was denied on October 22, 1987.

Trial commenced on October 27, 1987. At the close of all testimony, defendants moved for a directed verdict, arguing that the proofs did not establish wilful or wanton misconduct or that defendants' conduct was the proximate cause of plaintiffs' injuries. The trial court granted the motion as to defendant Croff, but denied it as to all the other defendants.

The jury returned its verdict on November 2, 1987, finding against the city and in favor of plaintiff William Malcolm in the amount of $400,000 and plaintiff Cynthia Malcolm in the amount of $100,000. The jury found that the city's misconduct was both wilful and wanton, but was *not* the proximate cause of plaintiffs' injuries. The jury found in favor of the remaining defendants.

After the verdict, the trial court returned the jury to the deliberation room. The court noted the

inconsistency in the verdict, and after discussion with counsel, the court formulated a revised jury form. Defense counsel noted his objection on the record. Later, the jury returned with its verdict, finding that the city's misconduct was the proximate cause of the plaintiffs' injuries. Judgment was entered on December 4, 1987.

The city subsequently moved for judgment notwithstanding the verdict, arguing as it did on its motion for a directed verdict that plaintiffs' proofs did not establish wilful or wanton misconduct or proximate causation. The city also claimed that plaintiffs' cause of action was barred by governmental immunity and that the jury's original finding of no proximate cause should have compelled the trial court to enter a verdict in favor of the defendants. The city's motion was denied by the court on February 5, 1988.

The city argues first that the trial court erred in denying its motion for summary disposition based on governmental immunity. We disagree.

Plaintiffs maintain that MCL 333.20737; MSA 14.15(20737), of the emergency medical services act, sets forth a statutory exception to the governmental immunity act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* In most cases, MCL 691.1407; MSA 3.996(107) provides immunity from all tort liability to governmental agencies when they are engaged in the exercise or discharge of a governmental function. However, § 20737 specifically states:

When performing services consistent with the individual's training, acts or omissions of an ambulance attendant, emergency medical technician, emergency medical technician specialist, or advanced emergency medical technician do not impose liability on those individuals in the treatment of a patient when the service is performed outside

a hospital. Such acts or omissions also do not impose liability on the authorizing physician or physician's designee, the person providing communications services or lawfully operating or utilizing supportive electronic communications devices, the ambulance operation, the hospital or an officer, member of the staff, nurse, or other employee of the hospital, *or the authoritative governmental unit or units. All persons named in this section, and emergency personnel from outside the state, are protected from liability unless the act or omission was the result of gross negligence or wilful misconduct.* [Emphasis added.]

Defendant counters by citing to a recently published opinion of this Court, *Bokor v Detroit,* 178 Mich App 268, 272; 443 NW2d 399 (1989), which stated in dicta:

> Moreover, even had the alleged negligent conduct fallen within the ambit of the statute [§ 20737], we do not believe the statute provides an exception to the governmental immunity act, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* or imposes vicarious liability on governmental agencies. When imposing liability for acts or omissions resulting from gross negligence or wilful misconduct, the statute refers to "[a]ll persons" named in the statute, not governmental units.

While at first blush such an interpretation of the statute seems reasonable, it appears that both the *Bokor* Court and defendant city here overlooked MCL 8.3-1; MSA 2.212(12), which unambiguously provides:

> Sec. 3-1. The word "person" may extend and be applied to bodies politic and corporate, as well as to individuals.

Further, MCL 8.3; MSA 2.212 provides:

Sec. 3. In the construction of the statutes of this state, the rules stated in sections 3a to 3w shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature.

Since no contrary definition or intent is clearly manifested in § 20737, "[a]ll persons" must, by express statutory definition and construction, include governmental units. Thus, we conclude that MCL 333.20737; MSA 14.15(20737) provides a limited statutory exception to governmental immunity where "the act or omission was the result of gross negligence or wilful misconduct."

The city also argues that, even should the EMS statute provide an exception to governmental immunity, the evidence was insufficient to establish wilful or wanton misconduct on the part of the city or that its conduct was the proximate cause of plaintiffs' injuries. We disagree on these points as well.

When reviewing a claim of insufficient evidence, this Court must view the evidence in a light most favorable to the plaintiffs and give the plaintiffs the benefit of every reasonable inference which can be drawn from the evidence. If, after reviewing the evidence in this way, reasonable people could differ, the question is properly left to the trier of fact. *Boggerty v Wilson,* 160 Mich App 514, 522; 408 NW2d 809 (1987), lv den 430 Mich 851 (1988). Also, the issue of proximate causation is generally for the jury, as trier of fact, to resolve. *Richards v Pierce,* 162 Mich App 308, 317; 412 NW2d 725 (1987).

The test for wilful and wanton misconduct, set forth in *Gibbard v Cursan,* 225 Mich 311, 322; 196 NW 398 (1923), requires:

(1) Knowledge of a situation requiring the exer-

cise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

Although this test was criticized as "poorly phrased" by the Supreme Court in *Burnett v City of Adrian,* 414 Mich 448, 455-456; 326 NW2d 810 (1982), the Court declined to reformulate it, and the *Gibbard* test continues to be applied by this Court. See *Wright v Dudley,* 158 Mich App 154, 158; 404 NW2d 217 (1986), vacated on other grounds 429 Mich 887 (1987); *Williams v City of Cadillac,* 148 Mich App 786, 793; 384 NW2d 792 (1985). However, the *Burnett* Court did note that

willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does. Willful and wanton misconduct is not, as the *Gibbard* Court observed, a high degree of carelessness. [414 Mich 455.]

In this case, there was sufficient evidence to support a finding that the city's conduct was wilful and wanton. Fire fighters Moen and Klawender both conceded that they were not certified as emergency medical technicians and, since they were not EMTS, they could only provide basic first aid. Defendant Croff, who is an EMT, conceded that he should have gone on the run at the outset. He also testified that this was not the first time that an EMT was not sent on the initial call. Plaintiffs' expert, Dr. Robert Aranosian, director of emergency services at Pontiac Osteopathic Hospital,

testified that in a basic EMS system such as that employed by the defendant city one of the responding personnel must be an EMT and that in this case the care provided by fire fighters Moen and Klawender did more harm than good. Dr. Aranosian testified that, if the airway had been kept clear and if more oxygen had been used during the arrest period, plaintiff's resuscitation would have been more successful, there would have been fewer defibrillation attempts, and the brain damage that occurred would not have resulted. He opined further that, if the appropriate personnel had responded, brought the proper equipment and followed the proper procedure, the plaintiff would not have been hurt. Although the city presented expert testimony to the contrary, it was not dispositive and there remained a genuine issue of fact. Thus, we conclude that there was clearly sufficient evidence for the jury, as trier of fact, to conclude that the city knew of the situation and did nothing, that the city's conduct was not the product of inadvertence or carelessness but, rather, the type of conduct which demonstrates wilfulness. Further, we find that this evidence supports a finding of proximate causation as well.

The city's next contention is that it was error for the trial court to have reinstructed the jury when it returned a contradictory verdict instead of entering a judgment of no cause of action against defendant. However, where the verdict is inconsistent or contains a remedy not authorized by law, the court must either reinstruct the jury or order a new trial. *Ass'n Research & Development Corp v CNA Financial Corp*, 123 Mich App 162, 167-168; 333 NW2d 206 (1983), lv den 419 Mich 881 (1984). Here, the trial court's decision to reinstruct the jury was proper.

On cross appeal, plaintiffs argue that the trial

court erred in granting a directed verdict in favor of defendant Croff. We disagree. When viewing the facts in the light most favorable to plaintiffs, *Bouwman v Chrysler Corp,* 114 Mich App 670, 677; 319 NW2d 621 (1982), lv den 417 Mich 989 (1983), while there was evidence to support a finding that defendant Croff's conduct was inadvertent, or perhaps negligent, there was no evidence to indicate that it was wilful or wanton. The directed verdict was properly granted.

Finally, plaintiffs argue that the trial court erred by holding that the gross negligence language of MCL 333.20737; MSA 14.15(20737) was inapplicable to the present case. However, for a gross negligence claim to be actionable it must allege that the defendant's negligent conduct occured subsequent to some negligent conduct on the part of the plaintiff. *Graham v Gratiot Co,* 126 Mich App 385, 388-389; 337 NW2d 73 (1983); *Burnett, supra* at 454; *Gibbard, supra* at 319-320. In this case, plaintiffs failed or were unable to allege that defendants' negligence was subsequent to any negligent acts on the part of the plaintiffs. Though plaintiffs argue that the concept of gross negligence can also be defined as an extreme departure from ordinary care, or a severe degree of negligence, citing *St Onge v Detroit & M R Co,* 116 Mich App 128, 131-132; 321 NW2d 865 (1982), lv den 417 Mich 929 (1983), we note that this theory was considered and rejected by Justice MOODY in his concurring opinion in *Burnett, supra* at 476, n 23, joined by Justices WILLIAMS and LEVIN, as essentially unworkable, confusing, and in conflict with proper negligence analysis. The *Burnett* majority simply stated that it was "bound" by the *Gibbard* definition of gross negligence, which requires the existence of precedent negligence on the part of the plaintiff. *Burnett, supra* at 455; *Gib-*

*bard, supra* at 319-320. Therefore, the trial court's grant of summary disposition on this issue was proper.

Affirmed.