PAVLOV v COMMUNITY EMERGENCY MEDICAL SERVICE, INC

Docket No. 129847. Submitted June 15, 1992, at Detroit. Decided September 8, 1992, at 9:35 A.M. Leave to appeal sought.

Galena Pavlov, as personal representative of the estate of Aleksandr Pavlov, deceased, brought a negligence action in the Oakland Circuit Court against Community Medical Service, Inc., and two of its advanced emergency medical technicians who, before the decedent's fatal heart attack, had examined him for shortness of breath and pain but did not transport him to a hospital. The court, Steven N. Andrews, J., granted summary disposition for the defendants, determining them to be immune from liability pursuant to the emergency medical services act, MCL 333.20737; MSA 14.15(20737), now MCL 333.20965; MSA 14.15(20965). The plaintiff appealed.

The Court of Appeals *held:*

Emergency medical technicians are immune from liability for acts or omissions in rendering services, outside a hospital and consistent with their training, unless the acts or omissions are the result of gross negligence or wilful misconduct. The trial court properly granted summary disposition for the defendants in view of the plaintiff's insufficient allegations of gross negligence and wilful misconduct.

1. The immunity granted by § 20737 to emergency medical technicians applied only to care rendered in emergency situations. An emergency, as defined by MCL 333.20703(1); MSA 14.15(20703)(1), existed throughout the period during which the defendants rendered care to the decedent.

2. The trial court did not err in summarily dismissing the plaintiff's claim of wilful misconduct. The plaintiff failed to present evidence that the defendants had intended to harm the decedent when they treated him.

3. Gross negligence occurs where a plaintiff's prior negligence puts the plaintiff in a position of danger and the defendant's subsequent negligence causes the plaintiff's injury. In this case,

REFERENCES

Am Jur 2d, Negligence §§ 209, 213 *et seq.*, 243-246.

See the Index to Annotations under Negligence; Intentional, Wilful, and Wanton Acts.

the plaintiff failed to offer evidence of prior negligence by the decedent. The trial court properly dismissed the plaintiff's claim of gross negligence.

Affirmed.

MICHAEL J. KELLY, J., concurring, stated that in the context of this case gross negligence is more properly defined as conduct so reckless as to demonstrate a substantial lack of concern for whether injury results, and that, under that definition, the defendants were not grossly negligent.

NEGLIGENCE — EMERGENCY MEDICAL TECHNICIANS — GROSS NEGLIGENCE — WILFUL MISCONDUCT.

Emergency medical technicians are immune from liability unless their acts or omissions are the result of gross negligence or wilful misconduct; wilful misconduct is established upon proof that the emergency medical technician intended to harm a patient; gross negligence is established upon proof that a patient's prior negligence put the patient in a position of danger and that the technician's subsequent negligence caused injury to the patient (MCL 333.20737; MSA 14.15[20737], now MCL 333.20965; MSA 14.15[20965]).

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Lee R. Franklin*), for the plaintiff.

*Galbraith & Booms* (by *Steven B. Galbraith* and *Kevin S. Oliver*), for the defendants.

Before: JANSEN, P.J., and MICHAEL J. KELLY and CORRIGAN, JJ.

CORRIGAN, J. In this negligence action, plaintiff Galena Pavlov appeals as of right from the trial court's grant of summary disposition based on defendants' immunity under the former emergency medical services act (EMSA), MCL 333.20701 *et seq.*; MSA 14.15(20701) *et seq.*[1] We affirm.

Plaintiff and her forty-one-year-old husband Aleksandr were visiting friends on the night of

[1] The former emergency medical services act was repealed and reenacted. 1990 PA 179, codified at MCL 333.20901-20979; MSA 14.15(20901)-(20979).

June 19, 1988, when Mr. Pavlov, who had been drinking alcohol and swimming, began experiencing shortness of breath. After someone called 911, an emergency medical services (EMS) unit was dispatched to the house. The EMS crew found Mr. Pavlov lying down, "complaining of shortness of breath and pain radiating to the left arm." He was given oxygen. An advanced EMS (AEMS) team (defendants Robert Latrielle and Christopher Newell) arrived and performed an electrocardiogram (EKG). The results were normal. The AEMS team removed the oxygen mask and Mr. Pavlov appeared to improve. When he asked if he should be seen by a doctor, defendants replied that he should. Mr. Pavlov said that his family would take him and he signed a release form, waiving transportation to a hospital. Defendants left the premises. Plaintiff then briefly left the room. She returned to find Mr. Pavlov lying on the floor in full cardiac arrest. EMS personnel were summoned again and attempted resuscitation without success. Mr. Pavlov was later declared dead at a local hospital.

Plaintiff timely filed a three-count complaint against the two AEMS technicians and their private employer. She alleged negligence, wilful and wanton misconduct, and gross negligence. Defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). Defendants asserted immunity under the then governing provisions of the EMSA because plaintiff had failed to state a claim of either wilful misconduct or gross negligence that would avoid the statutory bar. The trial court granted defendants' motion as to all three counts.

## I. IMMUNITY UNDER THE EMERGENCY MEDICAL SERVICES ACT

At the time plaintiff's claim arose, Michigan

expressly excepted emergency medical personnel from negligence claims relating to the performance of their duties. The applicable statute provided:

> When performing services consistent with the individual's training, acts or omissions of an . . . emergency medical technician, emergency medical technician specialist, or advanced emergency medical technician, do not impose liability on those individuals in the treatment of a patient when the service is performed outside a hospital. . . . *All persons named in this section . . . are protected from liability unless the act or omission was the result of gross negligence or wilful misconduct.* [MCL 333.20737; MSA 14.15(20737);[2] emphasis added.]

Plaintiff argues that § 20737 grants EMS technicians immunity only when they are acting in emergencies and that defendants' actions in failing to transport the decedent to a hospital ended the "emergency" and "preclude[s] them from claiming statutory immunity from liability . . . ." We disagree.

The statutory scheme itself provided a definition of "emergency." MCL 333.20703(1); MSA 14.15(20703)(1) read:

> "Emergency" means a condition or situation in which an individual declares a need for immediate medical attention for any individual, or where that need is declared by emergency medical personnel or a public safety official. Upon arrival at a scene of an emergency, and after direct communication with the medical control authority and approval of

---

[2] This section was added to the Public Health Code by 1981 PA 79, § 1. The entire emergency medical services act was repealed effective July 2, 1990, but reenacted in substantially similar form as 1990 PA 179.

the medical control authority, an individual licensed under this part or a health professional licensed under article 15 who possesses training specific to the provision of emergency medical services, may declare that an emergency no longer exists and transportation by an ambulance is not necessary.

The undisputed evidence reflects that an emergency existed when defendants arrived at the home of the plaintiff's host. EMS had been summoned by a call to the local emergency system via 911. Thus, "an individual [had] declare[d] a need for immediate medical attention for [an] individual [decedent]." The emergency was never declared at an end "after direct communication with the medical control authority and approval of the medical control authority." Indeed, no evidence whatever suggests that defendants attempted "direct communication with the medical control authority" as defined by MCL 333.20705(2); MSA 14.15(20705)(2).

The statutory grant of immunity under MCL 333.20737; MSA 14.15(20737) applies only to care rendered in emergency situations. *Knight v Limbert,* 170 Mich App 410, 414; 427 NW2d 637 (1988). Defendants' first encounter with the decedent was plainly an emergency situation. The emergency was not terminated under the statutory procedure. Therefore, § 20737 was applicable and defendants are immune from liability. The trial court correctly granted defendants' motion for summary disposition of this count.

## II. DEFENDANTS' ACTS DID NOT CONSTITUTE WILFUL MISCONDUCT

Plaintiff next claims that defendants' action in removing the oxygen mask may "rise to the level of" wilful misconduct and strip defendants of the

protection of MCL 333.20737; MSA 14.15(20737). We cannot agree.

It has been long established in Michigan law that mere negligence cannot be cast as "wilfulness" simply for the purposes of bringing a complaint. As the Supreme Court said over a century ago, in rejecting a negligence claim:

> The allegation that defendant [acted] willfully . . . implies that the act was done with a set purpose to accomplish the results which followed the act. It involves more than negligence; it implies malice. [*Montgomery v Muskegon Booming Co,* 88 Mich 633, 644; 50 NW 729 (1891).]

Wilful means intentional. *McKimmy v Conductors Protective Assurance Co,* 253 Mich 521, 523; 235 NW 242 (1931). Wilfulness "transcends negligence—[it is] different in kind." *Gibbard v Cursan,* 225 Mich 311, 320; 196 NW 398 (1923); *Finkler v Zimmer,* 258 Mich 336, 341; 241 NW 851 (1932). "The term 'wilful' implies intention, but wilful misconduct lies somewhere between intentional conduct and ordinary negligence." *Serra v DeMaestri,* 66 Mich App 171, 175; 238 NW2d 568 (1975) (child's intentional tort). Or, in the words of another panel of this Court, "willful negligence is quasi-criminal and manifests an intentional disregard to another's safety." *Papajesk v Chesapeake & O R Co,* 14 Mich App 550, 556; 166 NW2d 46 (1968).

Plaintiff here, however, relies on authority construing the phrase "wilful and wanton misconduct." We think the two differ significantly. "Wanton" conduct is "reckless," conduct that "amounts to" wilful injury, see, e.g., *LaCroix v Grand Trunk W R Co,* 379 Mich 417, 424; 152 NW2d 656 (1967), but without intent. As the Supreme Court said in

discussing *Gibbard, supra,* conduct that shows "such indifference to whether harm will result as to be the equivalent of a willingness that it does" fits the "wanton" prong of the "wilful and wanton" standard. *Burnett v City of Adrian,* 414 Mich 448, 455; 326 NW2d 810 (1982). A standard that permits liability for "wilful and wanton conduct" is less restrictive than one that confines liability to "wilful" conduct alone. The former allows liability when the defendant is so careless as to, in effect, intend harm, but the latter requires that intent actually be present.

We cannot accept plaintiff's invitation to engraft onto the statute a standard that is not included in its plain language. We do not possess that legislative power and authority. The governing statute employs only the words "wilful misconduct." Had the Legislature wished to expand the potential liability of emergency medical services providers, it could have used the phrase "wilful and wanton" as it appears in, for example, the recreational users statute, MCL 300.201; MSA 13.1485.[3] The Legislature is deemed to be aware of the existence of the law in effect at the time of its enactments. *Malcolm v East Detroit,* 437 Mich 132, 139; 468 NW2d 479 (1991).

. Plaintiff has produced no evidence supporting an allegation that defendants intended to harm the decedent when they treated him on June 19, 1988. Plaintiff's counsel conceded as much at oral argument in the lower court, and defendants cite statements by several of plaintiff's witnesses that defendants did not intend the decedent any harm.

Further, plaintiff's complaint against defendants Latrielle and Newell sounds only in ordinary negligence, despite her references in the complaint to

---

[3] See, e.g., *Lucchesi v Kent Co Road Comm,* 109 Mich App 254, 259-268; 312 NW2d 86 (1981).

"wilful misconduct." Defendants were accused of "failing to properly assess [the decedent's] condition," "failing to provide emergency medical treatment," and generally failing to use "ordinary care." Alternatively, defendants allegedly showed "reckless and heedless disregard" of the decedent's needs. Defendants are immune from charges of ordinary negligence (see discussion in part I, *supra*) and we have declined to read "wilful misconduct" as "wilful and wanton misconduct," thus eliminating the "reckless and heedless disregard" counts. The trial court correctly dismissed this count pursuant to MCR 2.116(C)(8).

### III. DEFENDANTS' ACTS DID NOT CONSTITUTE GROSS NEGLIGENCE

Few aspects of negligence law have proven more frustrating to this state's courts than the construction of the term "gross negligence." The history of this problem was reviewed extensively in *LaCroix v Grand Trunk, supra* at 422-428, but a few words here are appropriate.

"Gross negligence" should be seen in its historical context. It was intended as a plaintiff's doctrine, borrowed from other jurisdictions to avoid the bar of contributory negligence. In *Gibbard, supra,* for example, the plaintiff's decedent a schoolgirl, was killed by a truck as she was walking on the side of the road. For unknown reasons, when she heard the truck approach, she jumped into the truck's path instead of jumping off the road. Under contributory negligence principles, the plaintiff might have been precluded from recovering. By invoking the doctrine of "gross negligence," the Court could turn liability back onto the defendant:

When will gross negligence of a defendant ex-

cuse contributory negligence of a plaintiff? In a case where the defendant, who knows, or ought, by the exercise of ordinary care, to know, of the *precedent negligence* of the plaintiff, by his *subsequent negligence* does plaintiff an injury. . . .

The theory of gross negligence is that the antecedent negligence of plaintiff only put him in a position of danger and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause. [225 Mich 319; citations omitted, emphasis in original.]

The *Gibbard* definition has remained unaltered, despite the adoption in Michigan of comparative negligence (*Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 [1979]) and the dissatisfaction with its misuse noted even in *Gibbard, supra* at 321. See, e.g., *Papajesk, supra* at 555. Our Supreme Court specifically declined an opportunity to redefine the phrase in *Burnett, supra* at 455-456, stating that it preferred to wait for a case with a "fully developed factual record." *Id.* at 456.

Gross negligence may be decided as a matter of law if the evidence unquestionably shows its existence. *Shepherd v Barber,* 20 Mich App 464, 466; 174 NW2d 163 (1969). The record here does not reflect gross negligence *as defined in the Gibbard/ Burnett line of authority,* i.e., the decedent's antecedent negligence. This Court continues to apply that requirement; see, e.g., *Abraham v Jackson,* 189 Mich App 367, 372; 473 NW2d 699 (1991) (emergency medical technicians transporting patient); *McNeal v DNR,* 140 Mich App 625, 632; 364 NW2d 768 (1977) (maintenance of state park); *Grasser v Fleming,* 74 Mich App 338, 348; 253 NW2d 757 (1977), overruled on other grounds 430 Mich 262, 279; 422 NW2d 657 (1988) (plaintiff "helplessly intoxicated" when served by defendant).

In light of the state of the substantive law on this issue, we are unable to say that the lower court erred in applying the *Gibbard/Burnett* definition to this case. Cf. *In re Bay Co Prosecutor,* 102 Mich App 543, 549; 302 NW2d 225 (1980); *Marshall v Pech,* 95 Mich App 454; 291 NW2d 78 (1980). Furthermore, we are bound to apply that definition because another panel of this Court retained it in *Abraham, supra* at 372. *Abraham* was published in 1991 and so is controlling under Administrative Order No. 1990-6, 436 Mich lxxxiv.

In addition, case law plainly requires that the plaintiff must plead gross negligence correctly if the claim is to be addressed. "In order to properly allege gross negligence, plaintiffs must plead defendants' subsequent negligence." *Mallory v Detroit,* 181 Mich App 121, 125; 449 NW2d 115 (1989), another case construing MCL 333.20737; MSA 14.15(20737). The panel in *Malcolm v East Detroit,* 180 Mich App 633, 643; 447 NW2d 860 (1989), applied the same rule: "[F]or a gross negligence claim to be actionable it must allege that the defendant's negligent conduct occurred subsequent to some negligent conduct on the part of the plaintiff."[4] The Supreme Court reversed the *Malcolm* decision on other grounds, but did not address the definition of "gross negligence" because the plaintiff failed to raise it on cross appeal. 437 Mich 132, 147-148; 468 NW2d 479 (1991). See also *Abraham, supra* at 372.

Plaintiff, however, urges us to ignore the definition of gross negligence set out in *Malcolm, Mal-*

---

[4] Plaintiff has attempted to remedy this deficiency by pointing to Aleksandr Pavlov's obesity and cigarette smoking as his "precedent negligence." As the trial court noted, however, the decedent's health habits were unknown to defendants at the time they attended to him. In any event, we seriously question whether smoking and overeating are examples of "antecedent negligence" as that term has been used in Michigan law.

*lory,* and *Abraham* and apply instead the standard found in MCL 691.1407(2)(c); MSA 3.996(107)(2)(c), which provides that " 'gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Plaintiff asks that we construe the EMSA in pari materia with the government tort liability act[5] (GTLA). While we recognize that the Supreme Court did construe the two statutes together in its analysis of *Malcolm* (see 437 Mich 145), the focus of that decision was on the imposition of vicarious liability under those acts. The Court did not simply engraft part of the GTLA onto the EMSA, as plaintiff would have us do here.

Statutes are in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. *Richardson v Jackson Co,* 432 Mich 377, 384; 443 NW2d 105 (1989), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 51.03 (governmental immunity act and marine safety act). An act is not in pari materia with another act, even if it incidentally refers to the same subject, if the scope and aim of the two acts are distinct and unconnected. *Palmer v State Land Office Bd,* 304 Mich 628, 636; 8 NW2d 664 (1943). See also, e.g., *Dome Pipeline Corp v Public Service Comm,* 176 Mich App 227, 232; 439 NW2d 700 (1989) (definitions of "gas" in various acts).

Contrary to plaintiff's assertion, the immunity provisions of the EMSA and the GTLA are not in pari materia when, as here, the defendants are not governmental employees. That is, although both sections refer to the same subject—immunity from liability—their "scope and aim," *Palmer, supra,* are "distinct and unconnected." They do not "re-

---

[5] 1964 PA 170, codified at MCL 691.1401-1415; MSA 3.996(101)-(115).

late to . . . the same class of persons . . . or have the same purpose or object," *Richardson, supra,* when the potential defendants are not public employees. MCL 691.1407; MCL 3.996(107) broadly grants immunity to all public employees to make it possible for governments to operate relatively free from the fear of liability for unpopular decisions. The stated purpose of the GTLA was to "define and limit" liability of governmental units. By contrast, 1981 PA 79, which added § 20737 to the Public Health Code, amended 1978 PA 368, which was described as "[a]n act to protect and promote the public health . . . ." The Legislature presumably made the coverage of § 20737 broad enough to encourage the development of EMS systems, whether public or private, so as to maximize the availability of such services to the public. We will not disturb that effort by importing into the EMSA the definition of gross negligence specifically crafted for the GTLA[6] when it is not the actions of

---

[6] We have identified thirty-four Michigan statutes that employ the term "gross negligence." Only MCL 691.1407; MSA 3.996(107) inserts its own definition. See MCL 29.7c; MSA 4.559(7c) (fire fighters); MCL 30.407(5); MSA 4.824(17)(5) (director of emergency management); MCL 30.411(3); MSA 4.824(21)(3) (disaster relief personnel); MCL 30.432(2); MSA 13.31(72)(2) (hazardous waste spills, volunteers); MCL 41.711a; MSA 5.160(1) (ambulance drivers, attendants, police, fire fighters); MCL 299.612a(6), (10)(b), (11)(a), (12)(a); MSA 13.32(12a)(6), (10)(b), (11) (a), (12)(a); MCL 299.613(2)(a); MSA 13.32(13)(2)(a) (hazardous waste, various persons); MCL 300.201(1),(2); MSA 13.1485(1),(2) (recreational land users); MCL 316.605(6); MSA 13.1350(605)(6) (lessors of hunting lands); MCL 317.176; MSA 13.1482(6) (recreational trespass); MCL 330.1427b(2); MSA 14.800(427b)(2) (officer taking persons into protective custody); MCL 330.1439; MSA 14.800(439) (person filing treatment petition under Mental Health Code; MCL 333.6508(2); MSA 14.15(6508)(2) (treatment of substance abusers); MCL 333.9203(3); MSA 14.15(9203)(3) (free immunizations); MCL 333.20965; MSA 14.15(20965) (providers of emergency medical services); MCL 338.981(1)(c); MSA 18.86(11)(1)(c) (mechanical contractors); MCL 339.604(e); MSA 18.425(604)(e) (violations of occupational code); MCL 339.2715(a); MSA 18.425(2715)(a) (optometrists); MCL 380.1178; MSA 15.41178 (administration of medication to students); MCL 484.1604; MSA 22.1467(604) (emergency telephone/telegraph operators); MCL 487.1707(1)(c); MSA 23.1189(707)(1)(c) (officers of financial institutions);  ·

governmental employees that are at issue. Such a step is for the Supreme Court or the Legislature.

The trial court correctly dismissed plaintiff's gross negligence count.

Affirmed. Costs to defendant.

JANSEN, P.J., concurred.

MICHAEL J. KELLY, J. *(concurring)*. I concur in the result reached by Judge CORRIGAN, principally because of the uncompelling context within which plaintiff seeks to avoid the immunity afforded the emergency medical technicians by the emergency medical services act.

I believe that viewing the plaintiff's claims in the light most favorable to her, she has failed to supply a factual basis for treating the advanced emergency medical technicians as being guilty of "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." MCL 691.1407(2)(c); MSA 3.996(107)(2)(c). I opt for that definition of gross negligence because that is the only definition that makes sense in the context of emergency medical service. To use a fashionable term, it is ludicrous to attempt to portray human suffering and trauma inflicted by the forces of nature or society as negligence in order to establish gross negligence as defined by case law. The

---

MCL 500.2124(2); MSA 24.12124(2) (automobile insurers, issuance of policies); MCL 500.2130(2); MSA 24.12130(2) (automobile insurers, exchange of information); MCL 554.455(4)(e); MSA 27.3178(241.25)(4)(e) (custodians of minors' accounts); MCL 559.154(6); MSA 26.50(154)(6) (officers of condominium associations); MCL 600.5839(1); MSA 27A.5839(1) (architects, engineers, and contractors); MCL 691.1407; MSA 3.996(107) (governmental units, employees, etc.); MCL 691.1501(1),(2); MSA 14.563(1),(2) (physicians and nurses, competitive sports); MCL 691.1503; MSA 14.563(13) (medical personnel, emergency care and immunizations); MCL 691.1504(1); MSA 14.563(14)(1) (CPR, volunteers); MCL 691.1505(1); MSA 14.563(15)(1) (block parents); MCL 691.1507; MSA 14.563(17) (ski patrols); MCL 700.173(5); MSA 27.5173(5) (personal representative of estate); MCL 700.553(2); MSA 27.5553(2) (fiduciaries).

Supreme Court has signaled its intention to set this scheme aright in *Burnette v City of Adrian,* 414 Mich 448; 326 NW2d 810 (1982), and *Malcolm v East Detroit,* 437 Mich 132; 468 NW2d 479 (1991), but I do not anticipate that this is the case that will supply the factual basis for a new "best effort" by the Supreme Court. The most critical fault plaintiff has to offer is that the removal of the oxygen mask was fatal, but the medical reason for that removal is easily explicable as reasonable treatment for hyperventilation, for which the use of oxygen is contraindicated. No testimony supports the inference that the fire department EMS team, which were the first arrivals, were any better equipped to afford medical diagnosis and emergency treatment than the advanced EMS team; that the latter was misguided, misled, abused, or confused by the former; that the EKG or other tests were grossly misinterpreted, or that Messrs. Latrielle and Newell made anything more than a commonplace medical misjudgment.

I would be gratified to see the Legislature insert the government tort liability act definition of gross negligence in the present version of the emergency medical services act, MCL 333.20901 *et seq.;* MSA 14.15(20901) *et seq.* I agree with plaintiff that the pre-*Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), case law definitions of gross negligence are obsolete.