GIBBARD v. CURSAN.

1. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — FRIGHT — DIRECTED VERDICT.

In an action for the negligent killing of plaintiff's intestate, who was overtaken and struck by defendants' truck as she was walking near the right-hand edge of a paved country highway, it cannot be said that she was guilty of contributory negligence, as a matter of law, even if she did turn to the left rather than to the right when she was frightened by defendant's truck close behind her, since the law makes allowance for fright and the lack of coolness of judgment incident thereto.

2. SAME — PLEADING — WILFUL MISCONDUCT — EVIDENCE—ADMISSIBILITY—VARIANCE.

Evidence of wanton, wilful, and reckless misconduct was admissible under a declaration charging that "the said defendants, in violation of all their duties as hereinbefore stated, did carelessly, wantonly, wilfully, recklessly, and unlawfully steer, guide, propel, and operate said motor vehicle in an unlawful manner as aforesaid so that the motor vehicle so owned by defendant * * * and driven by the defendants * * * came in contact with plaintiff's intestate and then and there struck, knocked, and threw her to the ground with great force and violence," where the manner of averring it was not challenged, and there was no claim in the trial court that the averment was not specific.

3. SAME—GROSS NEGLIGENCE OF DEFENDANT EXCUSES CONTRIBUTORY NEGLIGENCE OF PLAINTIFF.

In the ordinary case of negligence, if the plaintiff has

On another's negligence not an excuse for wilful or wanton injury, see note in 69 L. R. A. 516.

For authorities discussing the question of the doctrine of last clear chance as affected by question whether negligence of plaintiff or deceased and of defendants were concurrent, see notes in 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379.

On question as to whether wilfulness, precluding defense of contributory negligence, may be predicated of the omission of a duty before the discovery of a person in a position of peril on a railroad or street railway track, see note in 21 L. R. A. (N. S.) 427.

On admissibility of statements made by agents or servant sometime after the accident, see note in 42 L. R. A. (N. S.) 918.

been guilty of negligence contributing to the injury for which the action is brought, he cannot recover, and it is to avoid this rule and to excuse contributory negligence of a plaintiff that the doctrine of gross negligence is usually invoked.

4. SAME—THEORY OF GROSS NEGLIGENCE.

Gross negligence of a defendant excuses contributory negligence of a plaintiff in a case where the defendant knows, or ought, by the exercise of the most ordinary care, to know, of the precedent negligence of the plaintiff, and by his subsequent negligence does plaintiff an injury; the theory being that the antecedent negligence of plaintiff only put him in a position of danger and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause.

5. SAME—GROSS NEGLIGENCE NOT APPLICABLE IN ABSENCE OF CONTRIBUTORY NEGLIGENCE.

Where a plaintiff free from negligence is negligently injured by the defendant, there is no occasion to invoke the doctrine of gross negligence to excuse plaintiff's negligence for there is no negligence to plaintiff to be excused.

6. SAME—GROSS NEGLIGENCE NOT APPLICABLE WHERE NEGLIGENCE OF PLAINTIFF CONCURRENT.

If the negligence of plaintiff is concurrent with that of defendant the rule of gross negligence does not apply, since it may be invoked only where there is antecedent negligence of plaintiff and subsequent negligence of defendant.

7. SAME—GREAT NEGLIGENCE DOES NOT CONSTITUTE GROSS NEGLIGENCE.

Nor may it be said that because defendant's negligence is great, of a comparative or superlative degree, it may therefore be called "gross," and that plaintiff's contributory negligence may, for that reason alone, be excused,

8. SAME—COMPARATIVE NEGLIGENCE.

The rule of comparative negligence does not obtain in this State.

9. SAME—WILFUL INJURY OF ANOTHER TRANSCENDS NEGLIGENCE AGAINST WHICH CONTRIBUTORY NEGLIGENCE IS NO DEFENSE.

If one wilfully injures another or if his act is so wanton or reckless that it amounts to the same thing, it transcends negligence, is different in kind and is characterized by

wilfulness rather than by inadvertence, although it is often incorrectly called negligence, and in such a case contributory negligence is no more a defense than it would be in a case of assault and battery.

10. SAME — TRIAL — INSTRUCTIONS—USE OF TERM "GROSS NEGLI-GENCE," AS COMMONLY UNDERSTOOD NOT ERROR.

Where the purpose of the trial judge was to permit the jury to determine whether defendants' conduct had been wilful, wanton, or reckless, as distinguished from merely negligent, it was not a fatal error for him to term it "gross negligence," since the term is so used and understood commonly and generally.

11. SAME — COMPARATIVE NEGLIGENCE — INSTRUCTIONS FAVORING APPELLANT NOT FATAL EVEN IF OBJECTIONABLE — APPEAL AND ERROR.

Where there was evidence from which the jury might have inferred that defendants were guilty of wilful, wanton, and reckless misconduct, against which the negligence of the deceased, if any, would be no defense, an instruction to the jury that if they found that the facts "show gross negligence on the part of the driver, and only slight negligence on the part of the girl, or less negligence than that on the part of the driver, * * * then the plaintiff is entitled to a recovery," *held*, not reversible error, even if open to the objection that it stated a rule of comparative negligence, since it favored defendants.

12. TRIAL—WEIGHT OF EVIDENCE FOR JURY.

The weight to be given to various and conflicting statements of witnesses is for the jury.

13. EVIDENCE—ADMISSIONS—ADMISSIBILITY—APPEAL AND ERROR.

Where testimony of statements made by the driver of the truck 15 minutes or more after the accident was admissible against him as admissions, and the trial judge was not requested to control said testimony as to the other defendant, against whom it was not admissible, its admission was not reversible error.

Error to Sanilac; Beach (Watson), J.     Submitted October 2, 1923.     (Docket No. 11.)     Decided December 19, 1923.

Case by William Gibbard, administrator of the estate of Beatrice Gibbard, deceased, against Edmund

Cursan and another for the negligent killing of plaintiff's decedent.    Judgment for plaintiff.    Defendants bring error.    Affirmed.

*Vandeveer & Foster,* for appellants.

*Clink & Williams* (*A. B. Simonson,* of counsel), for appellee.

CLARK, J.    Plaintiff's intestate, Beatrice Gibbard, 13 years of age, in the afternoon of January 28, 1921, while walking on a paved country highway, on her way home from school, was overtaken, struck, and fatally injured by a Ford truck of defendant Brown City Co-operative Company, driven by its servant, defendant Edmund Cursan.    She died about three hours later.    The pavement was 18 feet wide, a main thoroughfare, and, on the day in question, dry and in good condition, and had shoulders of earth 3 or 4 feet wide on each side.    It runs north and south.    It is not said that there was a sidewalk at the place in question.    Plaintiff had testimony that school girls were walking north on, and near, the right side of the pavement at the time.    Beatrice and one Garnet Manchor were ahead.    Louise Hill and Edna Lowe were about 150 feet behind Beatrice and Garnet. There was testimony that Louise and Edna were walking "at the edge of the pavement," that Beatrice was walking on the left of Garnet, and that both were "about a foot from the edge of the pavement," and that "Garnet was toward the outer edge of the pavement, not far from the edge.    Beatrice was immediately west of Garnet, walking on the edge of the pavement."    Another truck, carrying wheel-barrows, shovels, etc., going north, making noise, passed the girls, and at the time that Beatrice was struck was distant 6 rods, 10 rods, or several hundred feet, according to the varying testimony of witnesses.    There was testimony that when the Ford truck overtook

Louise and Edna it was on the right side of the pavement and gave no warning of its approach. Louise testified:

"When Mr. Cursan passed us, we stepped off the pavement to the right, as he was so close. He went straight by us, without turning off at all, * * * going 25 or 30 miles an hour."

Edna testified:

"We had to get out of the way of it, by getting off the road. * * * After passing us the driver continued down the right side of the road. * * * It * * * continued on its way to the point where Beatrice and Garnet were walking."

Louise also testified:

"Mr. Cursan was driving in a northerly direction, and stayed on the right-hand side of the road. He did not slow down any before the accident. I could see him plainly all the time. He was driving close to the edge of the pavement on the right side."

There was evidence that defendant Cursan approaching Beatrice gave no warning until he was almost upon her. Defendant Cursan admits having seen the girls on the pavement when he was at least 10 rods distant. As he approached, they were in plain view for a distance of at least 80 rods. His statutory duty was (1 Comp. Laws 1915, § 4818):

"Upon approaching a person walking in the roadway of a public highway, or a horse or horses, or other draft animals being ridden, led or driven thereon, a person operating a motor vehicle shall slow down to a speed not exceeding ten miles an hour and give reasonable warning of its approach and use every reasonable precaution to insure the safety of such person or animal, and in case of a horse or horses or other draft animals, to prevent frightening the same."

No imperfection in the truck is claimed or shown. There was evidence that Cursan said, 15 minutes after striking the girl, in response to the question, "How

far back were you when you honked your horn?":
"Well, I was right up to her.   When I saw I couldn't
get around her I tooted the horn."   Brakes were
applied.   The truck skidded, it is said, along the
pavement about 25 feet.   At this point, a private
farm driveway of Mr. Millard leads to the east from
the right  margin of the pavement.   Mr. Millard
testified:   "The skid marks caused by the car in-
volved in the accident started in our driveway, and
skidded north."   There was other testimony that the
marks of the  skidding ran northwesterly.   There
was evidence that when the truck was "right up to"
Beatrice, or about 20 feet from her, and the horn was
sounded, she became frightened and ran to the left.
She was struck by the radiator.   Defendant's testi-
mony was that the speed of the truck at the time
was 15 or 16 miles per hour, while plaintiff's witnesses
say that the speed was from 25 to as high as between
30 and 40 miles per hour.   There was evidence also
that the truck was driven near the center of the
pavement and that it struck the girl when she was
considerably to the left of such center.   It is not
claimed that Cursan's conduct was influenced by the
presence of any other travelers, vehicles or objects on
or near the pavement at the time.   Plaintiff contends
that defendants were guilty of gross negligence, so-
called, and at least of ordinary negligence, and that
deceased was  guilty of no contributory negligence.
Defendants' claims, supported by evidence at the trial,
were stated by the trial judge:

"The defendant denies that the driver was driving
at an unlawful or unreasonable speed.   The defend-
ant affirms that the horn was sounded at a reasonable
distance of the girl; that he was passing far enough
to the left of the girl so that if she had remained in
her course, the machine would have passed to the left
and she would have escaped; that the girl, from some
impulse not connected with or originating from the
acts of the driver, suddenly attempted to cross the

road and that the driver did all that was reasonable—did all that a reasonably prudent man could do in the emergency to prevent any injury. Defendant claims that there was no negligence on the part of the driver, and that the girl was guilty of contributory negligence in attempting to cross the road in front of the machine."

The case was submitted to the jury with instructions respecting the claimed ordinary negligence of defendants and the claimed contributory negligence of the deceased. The jury was also permitted to consider whether defendants' conduct had been wanton, wilful or reckless. Plaintiff had verdict and judgment. Defendants bring error.

1. It is said that the trial judge erred in refusing to hold the deceased guilty of contributory negligence as a matter of law. On this question the evidence must be viewed in the light most favorable to plaintiff. Deceased had the right to walk on this pavement, a right which defendants were bound to respect. Defendants also had a right to use the road. The rights were mutual and co-ordinate. 29 C. J. p. 655. It is not claimed, and could not well be claimed here, that deceased was negligent in walking along and upon the right margin of the pavement. Her negligence, if any, must consist in her moving to the left just before being struck. But whether she did this or not is a question of fact. Witnesses say that she did. But if Mr. Millard is right in saying that the marks of the skidding began in (doubtless meaning opposite of) his driveway and went *north*, and if Edna and Louise are right as to location and direction of travel of the truck at the time, then deceased could have made no considerable movement to the left. But, assuming that she did, there was evidence that she was frightened, and in sudden peril. To one in such situation the law makes allowance for the fright and lack of coolness of judgment incident thereto. Perhaps if she had stepped to the right, as the other

girls did, she would have escaped, but, because of the sudden .peril, it will not now be held, imperatively, that she should have done that.    Defendants may not complain because the question was submitted to the jury.    See *Fehnrich* v. *Railroad Co.*, 87 Mich. 606; Baldwin on Personal Injuries (2d Ed.), p. 143.

2. It is urged that the declaration does not aver gross negligence, so-called.    The manner of averring it was not challenged, nor was it claimed in the trial court that the averment was not specific.    A paragraph states:

"The said defendants, in violation of all their duties as hereinbefore stated, did carelessly, wantonly, wilfully, recklessly and unlawfully steer, guide, propel and operate said motor vehicle in an unlawful manner as aforesaid so that the motor vehicle so owned by defendant, * * * and driven by the defendants, * * * came in contact with plaintiff's intestate and then and there struck, knocked and threw her to the ground with great force and violence."

Under the circumstances above set forth, this was sufficient to admit evidence of so-called gross negligence.    See *Mosso* v. *E. H. Stanton Co.*, 75 Wash. 220 (134 Pac. 941, L. R. A. 1916A, 943); *Denman* v. *Johnston*, 85 Mich. 387.    We are not called upon in this opinion to consider further the subject of pleading, nor to discuss the law relative to submitting a case to a jury on more than one theory of recovery.

3. In addition to instructing the jury on the theory of claimed negligence of defendants and of claimed contributory negligence of plaintiff, the trial judge defined gross negligence, so-called, to be a wanton, wilful or reckless act, or a wanton, wilful, and reckless failure to perform a duty to another, and said, after stating plaintiff's claims as to facts:

"If you find by the preponderance of the evidence in this case that these are the facts and that they show gross negligence—if you find that they show gross negligence on the part of the driver, and only slight

negligence on the part of the girl, or less negligence than that on the part of the driver, * * * then the plaintiff is entitled to a recovery in this case."

The quoted excerpt is said to be error as stating a rule of comparative negligence, not recognized in this State, and it is urged that no case of gross negligence was made out. In the ordinary case of negligence, if the plaintiff has been guilty of negligence, contributing to the injury for which the action is brought, he cannot recover. It is to avoid this rule and to excuse contributory negligence of a plaintiff that the doctrine of gross negligence is usually invoked.

When will gross negligence of a defendant excuse contributory negligence of a plaintiff? In a case where the defendant, who knows, or ought, by the exercise of ordinary care, to know, of the *precedent negligence* of the plaintiff, by his *subsequent negligence* does plaintiff an injury. Strictly, this is the basis of recovery in all cases of gross negligence. 20 R. C. L. p. 145. Such gross negligence is also sometimes called discovered negligence, subsequent negligence, wanton or wilful or reckless negligence, discovered peril, last clear chance doctrine, and the humanitarian rule. Other misconduct, different in kind, is also generally and incorrectly known as gross negligence, as we shall see later. *Richter* v. *Harper,* 95 Mich. 221; *Kelley* v. *Keller,* 211 Mich. 404; *Fike* v. *Railroad Co.,* 174 Mich. 167; *Knickerbocker* v. *Railway Co.,* 167 Mich. 596; *Buxton* v. *Ainsworth,* 138 Mich. 532 (5 Ann. Cas. 146).

The theory of gross negligence is that the antecedent negligence of plaintiff only put him in a position of danger and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause. Cooley on Torts (2d Ed.), p. 674; *Labarge* v. *Railroad Co.,* 134 Mich. 139.

If the plaintiff is in a position which has become

dangerous and he is free from negligence, and the defendant knows, or ought by the exercise of ordinary care to know, of plaintiff's peril, and nevertheless negligently injures him, there is no occasion to invoke the doctrine of gross negligence to excuse negligence of plaintiff, for there is no negligence of plaintiff to be excused. *Schnurr* v. *Railway*, 222 Mich. 591.

If the negligence of a plaintiff is concurrent with the negligence of a defendant, the rule as to antecedent negligence of plaintiff and subsequent negligence of defendant does not apply. The doctrine of gross, subsequent or discovered negligence may not be invoked to excuse concurrent negligence of a plaintiff. *Labarge* v. *Railroad Co., supra; Krouse* v. *Railway Co.,* 215 Mich. 139; 1 Thompson on Negligence, § 208; 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379; Huddy on Automobiles (5th Ed.), p. 610. And see *Richter* v. *Harper,* 95 Mich. 221, at page 225.

Nor can it be said that because a defendant's negligence is great, of a comparative or superlative degree, it may therefore be called "gross," and that a plaintiff's contributory negligence may, for that reason alone, be excused. The rule of comparative negligence does not obtain in this State. *Richter* v. *Harper, supra; Labarge* v. *Railroad Co., supra.*

If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence —is different in kind. Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason

for permitting the defense of contributory negligence than in a case of assault and battery. True, such misconduct in this State and elsewhere usually has been called negligence, the word being qualified by such adjectives as gross, wanton, reckless, or wilful, but this is incorrect and has a tendency to mislead. We quote from a well-written opinion (*Atchison, etc., R. Co.* v. *Baker*, 79 Kan. 183 [98 Pac. 804, 21 L. R. A. (N. S.) 427]):

"Although what is really reckless and wanton misconduct is sometimes spoken of as gross negligence, the expression is everywhere recognized as inaccurate and unfortunate, because it seems to imply a difference only of degree, whereas the whole doctrine that contributory negligence is no defense where the injury is the result of recklessness and wantonness is based upon the theory of a difference in kind. For the same reason, the phrase 'reckless and wanton negligence' has a misleading tendency. One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not."

See, also, *Labarge* v. *Railroad Co., supra;* note, 21 L. R. A. (N. S.) 427; 69 L. R. A. 516; 23 L. R. A. 552; 44 L. R. A. 553; 20 R. C. L. p. 144; 14 A. L. R. 131; Baldwin on Personal Injuries (2d Ed.), p. 129; Cooley on Torts (2d Ed.), p. 674, and cases cited; 29 Cyc. p. 509; *Battishill* v. *Humphreys,* 64 Mich. 514; *Schindler* v. *Railway Co.,* 87 Mich. 400; *E. B. Muller & Co.* v. *Hines,* 216 Mich. 664; *Malmsten* v. *Railroad Co.,* 49 Mich. 94; *Vought* v. *Traction Co.,* 194 Mich.

343; *Wexel* v. *Railway Co.*, 190 Mich. 469; *Redson* v. *Railroad Co.*, 120 Mich. 671; *Bouwmeester* v. *Railroad Co.*, 63 Mich. 557; *Simon* v. *Railway*, 196 Mich. 586; *Matta* v. *Railway Co.*, 69 Mich. 109; *Walter* v. *Railway Co.*, 191 Mich. 181; *Putt* v. *Railway Co.*, 171 Mich. 216; *Montgomery* v. *Railway Co.*, 103 Mich. 46 (29 L. R. A. 287); *Freeman* v. *Railway Co.*, 74 Mich. 86 (3 L. R. A. 594).

According to note, 69 L. R. A. 516, and text, 20 R. C. L. p. 145, the elements necessary to characterize the injury in the case at bar as wilfully inflicted are:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another."

We apply the rules to the facts. The only negligence claimed against deceased is that she suddenly and negligently moved to the left in front of the oncoming truck, or that she suddenly and negligently attempted to pass in front of it at a time when it was concededly too late to stop the truck to avoid injuring her. If deceased was guilty of such negligence, it was not antecedent but concurrent. The doctrine of gross negligence, or subsequent negligence, or last clear chance, was therefore not applicable, nor was the case submitted to the jury on that theory, as contended by counsel. The purpose of the trial judge was to permit the jury to determine whether defendants' conduct had been wilful, wanton or reckless, as distinguished from merely negligent. That in defining such misconduct he termed it gross negligence is not fatal, because the term is so used and understood commonly and generally. If deceased was injured by the wilful, wanton or reckless misconduct of

defendants, negligence of the deceased was no defense.
Hence, the charge, stating, it is said, a rule of comparative negligence, favored defendants.    We think
there was some evidence from which the jury might
find that deceased was injured by wilful, wanton and
reckless misconduct of defendants.    Under the evidence and reasonable inference therefrom, it might
be found that the truck was driven at a reckless and
unlawful speed, as high as between 30 and 40 miles
an hour, that the truck was not slowed down to a
speed not exceeding 10 miles an hour, that there was
no slowing until the truck was almost upon the deceased, that reasonable warning of approach was not
given, that no precaution to insure the safety of deceased was taken (1 Comp. Laws 1915, § 4818), that
such conduct was without excuse or justification, that
deceased was in plain view of the driver for at least
80 rods, that she was actually seen when the truck
was at least 10 rods distant, that the course of the
truck was along and close to the right margin of the
pavement, so close that two of the girls, Louise and
Edna, had to step off the pavement to avoid it, that
when and after passing those girls no change in the
course of the truck was made, that it continued on,
directly toward and behind deceased, and that when
deceased discovered its presence it was almost upon
her, that she, in peril, instinctively sought to escape,
that her sudden movement to the left (if she so moved
and had time and opportunity so to do) was for that
and for no other purpose, and that her moving instinctively to the left instead of to the right indicates
that the truck was behind her and bearing closely upon
and directly toward her, instead of being some distance to the left of her as claimed.    See 21 L. R. A.
(N. S.) 427, and authorities above cited.    The weight
to be given to various and conflicting statements of witnesses was for the jury.    *Goonen* v. *Railroad Co.*, 218

Mich. 502.   The charge might well have been more elaborate but in submitting the question to the jury we hold that no error requiring reversal was committed by the court.

4. Witnesses were permitted to testify of statements made by defendant Cursan, driver of the truck, some 15 minutes or more after the impact.   Counsel for defendants sought to have the testimony excluded as being "incompetent and immaterial," "no part of the *res gestæ*," and "not within the scope of the employment."   The testimony was admissible against defendant Cursan himself as admissions.   The court was not requested to control this testimony as to the other defendant, against whom the statements were not admissible, being neither spontaneous nor a part of the act done, but a narrative of a past transaction. *Bernard* v. *Grand Rapids Paper Box Co.*, 170 Mich. 238 (42 L. R. A. [N. S.] 930) ; *Wormsdorf* v. *Railway Co.*, 75 Mich. 472 (13 Am. St. Rep. 453) ; *Feldman* v. *Railway*, 162 Mich. 486; *Jonescu* v. *Orlich*, 208 Mich. 89.   Admitting the testimony, therefore, will not be held to be cause for reversal.

Other questions are presented.   Space forbids a discussion of them.   They have been examined.   The verdict is not claimed to be excessive or against the weight of the evidence.   No reversible error is found.

Judgment affirmed.

WIEST, C. J., and MCDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.   FELLOWS, J., concurred in the result.