**Barbara WALTON, as Next Friend to Kamara Walton and Courtney Walton and Barbara Walton, individually, Plaintiffs,**

v.

**CITY OF SOUTHFIELD, a Municipal Corporation, and Officer Berberick and Officer Castleman, Jointly and Severally, Defendants.**

No. 90–CV–70953.

United States District Court, E.D. Michigan, S.D.

Oct. 16, 1990.

---

Dolores Preston–Cooper, Detroit, Mich., for plaintiffs.

T. Joseph Seward, Livonia, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

This is a civil rights action[1] that has been brought by the Plaintiff, Barbara Walton, on her own behalf, and as the next friend of her teenage daughter, Kamara, and her minor granddaughter, Courtney, for damages that were sustained by each of them as the result of a series of alleged violations of their Constitutional rights by the City of Southfield (City) and two of its police officers, Officer Berberick[2] and Officer Robert Castleman.

On July 5, 1990, the Defendants filed a Motion to Dismiss and/or for Summary Judgment, pursuant to *Fed.R.Civ.P.* 12(b)(6) and/or 56. For reasons that have been set forth below, this Court will grant in part and deny in part the Defendants' motion.

### I.

On May 17, 1990, at approximately 3:30 in the afternoon, Berberick stopped Barbara Walton, who was driving with her 15 year-old daughter, Kamara, and two year-old granddaughter, Courtney, in Southfield, Michigan. Berberick ostensibly believed that he had seen a child, who appeared to be under the age of five, sitting in the lap of a front seat passenger instead of being seated in a child restraint, as required by Michigan law.[3]

After stopping Walton, Berberick checked into the status of her driver's license and learned that it had been suspended in 1984. At this point, Berberick called for a police back-up and placed her under arrest for driving with a suspended license.

After the arrival of Castleman at the scene, Berberick searched and handcuffed Walton so that her arms were placed behind her back. Walton contends that at the time of her arrest, she was under the care of a medical doctor for a shoulder and arm injury—a fact about which she had made Berberick aware. On the basis of this medical condition, Berberick was asked by Walton that, if handcuffing was absolutely necessary, she be handcuffed with her hands in front but not behind her back. According to Walton, Berberick denied this request, placed his hand over a gun and said that he could "do it the easy way or the hard way."

Berberick placed Walton under arrest, parked her car in a nearby parking lot and advised Kamara to call someone to take her home. Walton claims that Berberick was made aware that Kamara did not know anyone whom she could call for immediate assistance. Berberick was also told by Walton that these two children had no way of getting home alone since they lived on the far east side of Detroit, and Kamara only had 20 cents in change. Walton asked Berberick and Castleman to take Kamara and Courtney into protective custody or, as an alternative, allow her to make other transportation arrangements for them. Her request was rejected. Berberick was asked by Walton if he would allow her to give money to Kamara from her own purse. This request was also declined.

---

1. In her Complaint against the Defendants, Walton alleges (1) violations of 42 U.S.C. section 1983 by the individual police officers [Count I] and the City of Southfield [Count II], (2) assault and battery [Count III], (3) intentional infliction of emotional distress [Count IV], and (4) willful and wanton misconduct and gross negligence [Count V].

2. The pleadings do not record Berberick's first name.

3. M.C.L.A. §§ 257.710d, 257.710e.

Thereafter, Berberick put Walton in the police car and transported her to the City police station, leaving the two children alone in the parking lot, with only 20 cents in change in their collective possession. Upon her arrival at the police station, Walton noticed that her shoulder and arm were discolored and locked in position for several minutes. Berberick was shown the discoloration but did not offer any assistance. When she asked to use the lavatory, Walton was told to use the toilet in her cell which was in open view of male prisoners and officers, all of whom were laughing and staring at her.

While being held at the police station, Walton became ill, and the City Fire Department was called. After examining her, paramedics advised the police officers in attendance that Walton should be taken to a hospital immediately because her heart rate was rapid and irregular, her blood pressure had elevated and she was having difficulty in breathing.

Walton was taken to Providence Hospital where she was diagnosed as having suffered a cardiac enzyme attack. While at the hospital, Walton was able to contact someone to pick up the children. By the time that the children were found, it was approximately 9:00 p.m.—a passage of nearly six hours of being left alone in the parking lot.

## II.

Defendants initially contend that the Plaintiffs have failed to state a claim against the individual officers for any violation of a right which is protected under 42 U.S.C. section 1983.

In order to establish a claim under this statute, the Plaintiffs must present evidence that (1) the Defendants were acting under the color of a municipal or state law and (2) they were deprived of a constitutional right. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). While acknowledging that the officers were acting as law enforcement officials for the City at the time of Walton's arrest, the Defendants argue that the second prong of the *Parratt* test has not been met. Specifically, they contend that Walton's allegations of (1) excessive force by them in making the arrest and (2) assault and battery, are not actionable under section 1983 because their actions were justified by the lawful arrest. The Defendants assert that this Count should be dismissed since an arrest, which is based upon probable cause, is not actionable as a Fourth Amendment violation.

In response, Walton disputes the Defendants' expressions of denial and submits that 1) the initial stop was unlawful, 2) unreasonable force was used during her arrest, 3) the abandonment of the minor Plaintiffs by the officers was intentional, and 4) her right of privacy was deliberately invaded when she was a) searched on two separate occasions, and b) denied an opportunity to use a private bathroom facility outside of the plain view of members of the opposite sex.

The basic premise of the Defendants' argument on this count is that Walton's initial stop and subsequent arrest was legal. However, this assumption, based upon an acceptance of her version of the incident as being correct for the purpose of this motion, is clearly wrong.

■ Walton was initially stopped for an alleged violation of a Michigan law which was designed, in part, to provide additional safety to minor passengers in motor vehicles.[4] An examination of the language of

4. The pertinent sections of the Michigan Child Restraint law read as follows:

M.C.L.A. section 257.710d:

(1) ... [E]ach driver transporting a child in a motor vehicle properly shall secure each child in a child restraint system as follows:

(b) Any child 1 year of age or more but less than 4 years of age, when transported in the front seat, in a child restraint system which meets the standards prescribed in 49 C.F.R. 571.213.

(c) Any child 1 year of age or more but less than 4 years of age, when transported in the rear seat in a child restraint system which meets the standards prescribed in 49 C.F.R. 571.213, unless the child is secured by a safety belt provided in the motor vehicle.

(2) MCLA section 257.710e:

the Michigan Child Restraint law reveals that its enforcement can only take place following the occurrence of a "primary action," such as a stop for a moving traffic violation.

The purpose of section 257.710d is to describe the type of child restraint system that is to be used for different ages of children. It is section 257.710e that governs the enforcement of section 257.710d.

Section 257.710e(3) specifically sets forth how a child must be restrained and incorporates section 257.710d by reference. Section 257.710e(4), which applies to the entire section, governs the enforcement of this law, and specifically states that enforcement can only occur as a "secondary action".

There is no dispute that Berberick effectuated the traffic stop to cite Walton for an ostensible violation of this statute. That was his primary purpose in stopping her automobile. Walton's arrest was a secondary action, as the result of Berberick's discovery that her license had been suspended.[5]

■ Since section 257.710e makes it clear that violations of the seat belt law are only secondary actions, the facts, when viewed in a light most favorable to the Plaintiffs, clearly suggest that Walton was unlawfully stopped by Berberick. Consequently, any subsequent action by the officers, including the arrest, searches, handcuffing and transporting of Walton to the police station, was without legal justification. Therefore, Barbara Walton has stated a cause of action for an unlawful stop, excessive force, and invasion of privacy under 42 U.S.C. section 1983.

■ With regard to the claims of the minor children for abandonment, the Defendants rely upon De Shaney v. Winneba-

go County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) for their premise that they had no constitutional duty to provide for the safety and well-being of the Walton children.

In De Shaney, the guardians of a four year-old child sued the Department of Social Services (DSS) for its alleged failure to protect the youngster from the beatings that his father had inflicted upon him which, in turn, ultimately resulted in irreversible brain damage. They maintained that the DSS, despite having been informed of the father's savagery over a 26 month period, had failed to act in a responsive manner.

The Supreme Court rejected their claim, holding that there had been no constitutional violation because the abuse occurred at the hands of a private party—not as the result of an action or inaction by a governmental entity or official. However, the Court also indicated that when the state acts affirmatively to limit a person's ability to protect himself or herself, such as incarceration or institutionalization, it owes a duty of care to that individual. Id. 109 S.Ct. at 1006.

In Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989), police arrested the driver of a car, impounded the vehicle, and took the car keys with them. The police left Wood, a female passenger, in the car which had been left in a high-crime area during the early morning hours. She was subsequently raped by a man who had offered her a ride home.

The district court granted summary judgment to the defendant, after concluding that the officer's actions were protected by good faith qualified immunity, and he owed no affirmative constitutional duty of protection to the passenger. Id. at 586. The Ninth Circuit Court of Appeals re-

---

(3) Each driver and front seat passenger of a motor vehicle operated on a street or highway in this state shall wear a properly adjusted and fastened safety belt, except that a child less than 4 years of age shall be protected as required in section 710d....

(4) Enforcement of this section by state or local law enforcement agencies shall be accomplished only as a secondary action when

a driver of a motor vehicle has been detained of a suspected violation of another section of this act.

5. Walton disputes this charge. She claims that her license, though suspended temporarily because of a lapse in her automobile insurance coverage, had been reinstated at the time of the arrest.

versed, holding that the state trooper was not entitled to qualified immunity because a "reasonable police officer who acted as [Wood has alleged] ... should have understood that what he was doing violated [the passenger's] right to be free from an unjustified intrusion into her personal security in violation of her liberty interest under the fourteenth amendment." *Id.* at 596. The Court concluded that, inasmuch as the officer had placed Wood in a situation of danger, and acted with "deliberate indifference to [her] interest in personal safety," she had stated a claim under section 1983. *Id.* at 584.

In the case that is currently pending before this Court, Kamara, who had recently been released from the hospital because of a severe digestive disorder, became ill subsequent to Walton's departure from the site of the arrest and experienced a burning pain in her stomach while waiting to be picked-up from the parking lot. Walton also claims that Kamara has experienced psychological trauma since the incident, and was subsequently placed under psychiatric care. According to Walton, Courtney, who was left in wet diapers for approximately six hours in the parking lot, suffered from a severe rash for several weeks after the May 17, 1990 incident.

The Plaintiffs have met their burden of stating a claim under *Fed.R.Civ.P.* 12(b)(6), and the Defendants' motion which seeks a dismissal of their claim on this Count must be denied.

### III.

■ Defendants argue that the Plaintiffs have not stated a claim under Count II of their Complaint, in that they have failed to set forth any specific facts which would indicate that the City failed to properly train its officers.

In response, the Plaintiffs contend that their claim is predicated upon the City having adopted a training policy which improperly ignores or trains its officers to handle situations such as the one that occurred in this case. They impliedly acknowledge that specific data which would presumably document their position on this issue is not immediately available, noting that discovery has not been completed.[6]

Although a municipality cannot be held liable under a theory of respondeat superior for a violation of 42 U.S.C. section 1983, liability can be imposed if an action has been taken "pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). In addition, municipalities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.*

Here, the Plaintiffs, through their Complaint, have adequately established a claim under 42 U.S.C. section 1983 against the City pursuant to *Fed.R.Civ.P.* 8(a), which only requires that pleadings set forth a claim for relief and contain "a short, plain statement of the claim showing that the pleader is entitled to relief." This minimal pleading requirement has been met, and the Defendants' motion for a dismissal of the Plaintiffs' claims under Count II must be denied.

■ With regard to the Defendants' request for the entry of a summary judgment on this issue, the Plaintiffs have failed to present any evidence of improper or inadequate training by the City. However, the Plaintiffs state that they cannot present documented facts until their discovery has been completed. Since discovery in this case is incomplete, the Defendants' application for relief under *Fed.R.Civ.P.* 56 must be denied without prejudice.

*Fed.R.Civ.P.* 56(f) serves as a guide to this Court for the Defendants' application for the entry of a summary judgment. A major objective of this Rule is to insure that a party is given a reasonable opportu-

---

**6.** According to the Scheduling Order of this Court, discovery is not scheduled to conclude

until December 29, 1990.

nity to prepare her case. In keeping with this philosophy, courts have been advised that a summary judgment should not be granted if discovery remains incomplete, Wright, Miller & Kane, Vol. 10A *Federal Practice & Procedure,* section 2741, or when there are major factual issues in dispute and one of the parties has not had a full opportunity to conduct pretrial discovery. *Rome v. U.S.,* 450 F.Supp. 378 (D.D.C.1978); *Martin v. D.C. Metropolitan Police Dep't,* 812 F.2d 1425 (D.C.Cir.1987). Therefore, and for the reasons that have been mentioned, the Defendants' Motion for Summary Judgment must be denied, without prejudice.

## IV.

In their collective challenges to the legal efficacy of Count III of the Complaint, each of the Defendants assert that (1) the City, as a governmental entity, is immune from tort liability, and (2) the officers are equally immune because they were acting within the scope of their authority when the arrest of Walton was made. In support of their governmental immunity argument, they rely upon the Michigan governmental immunity statute, Mich. Comp.Laws Ann. (M.C.L.A.) section 691.-1407, which provides in pertinent part:

> (1) Except as otherwise provided in this act, all government agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function....

In support of their immunity argument on behalf of the officers, the Defendants resubmitted their earlier position that they did not have any legal duty to ensure the minor childrens' safety. They cited several cases which stand for the proposition that police officers only owe a general duty to the general public, and not to any one individual. However, these case authorities are neither of assistance nor instructive wherever there is evidence, as there is here, that the officers have affirmatively acted to put an individual in a position of danger.

Nevertheless, the state courts in Michigan have held that a "municipality can be held liable for the intentional torts of its employees within the scope of their employment, as such activities are not in the exercise or discharge of a governmental function." *Moore v. Detroit,* 128 Mich.App. 491, 497, 340 N.W.2d 640 (1983), citing *Lockaby v. Wayne County,* 406 Mich. 65, 276 N.W.2d 1 (1979), *McCann v. State, Dept. of Mental Health,* 398 Mich. 65, 247 N.W.2d 521 (1976).

The Defendants assert that the Plaintiffs have failed to allege or establish gross negligence on the part of either officer which, according to them, is an essential prerequisite to the imposition of tort liability upon the tortfeasor under M.C.L.A. 691.-1407.[7] An intentional tort is not within the exercise or discharge of a governmental function. *Mosqueda v. Macomb County Youth Home,* 132 Mich.App. 462, 349 N.W.2d 185 (1984). Hence, governmental immunity is not a defense to an intentional tort.

---

**7.** The applicable provisions of M.C.L.A. § 691.1407(2), (3) read as follows:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment ... while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharged of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

(3) Subsection (2) shall not be construed as altering the law of intentional torts as it existed prior to the effective date of subsection (2).

Clearly, governmental immunity does not apply in this case. Hence, we must now address the sufficiency of the pleadings on this Count. Walton has alleged that "as a direct and proximate result of ... Berberick's actions [she] sustained severe and permanent injuries...." [8] The Plaintiffs' claims against the City and the two officers must be accepted as being correct for the purpose of this dispositive motion. Under this standard of review, this Court must conclude that the actions of the Defendants on May 17, 1990 amounted to a series of intentional torts against the Plaintiffs. Thus, the Defendants' Motion to Dismiss must be denied.

## V.

■ Count IV of the Complaint alleges that the Officers, through their actions or inactions, intentionally inflicted an emotional injury upon them. In order to establish a prima facie case of intentional infliction of emotional distress, an aggrieved party must demonstrate 1) extreme and outrageous conduct, 2) intent and recklessness, 3) causation, and 4) severe emotional distress. *Roberts v. Auto–Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905, 908 (1985). Intent has been defined as:

(1) [A] state of mind (2) about consequences of an act (or omission) and not about the act itself and (3) it extends not only to having in mind a purpose (or desire) to bring about consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act.[9]

In the instant case, the officers admit that they left the children alone in a parking lot with a total of 20 cents in their possession. It is clear to this Court that the officers intended to leave these minor children in a parking lot without immediate adult custodial care. However, there remains a question of fact as to whether these officers knew or should have known that these minor children would suffer a physical or an emotional upheaval as a

result of being left alone for an indeterminable period of time.

Kamara claims that she has "suffered from sleeplessness, loss of appetite, loss of enthusiasm and depression" since the date of the incident.[10] Walton attributes this emotional disturbance to the trauma that Kamara suffered as a result of having been left alone with a two-year old child without the ability to contact anyone for help or knowing if any family member would return.

Walton asserts that her own emotional distress was evidenced by an irregular heart rate and elevated blood pressure, which required emergency medical care. She attributes this malady directly to the abandonment of her child and grandchild by the individual Defendants, as well as their refusal to permit her to provide them with money or to make arrangements for them to be transported home.

Whether the officers' actions on May 17, 1990 amounted to outrageous conduct "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable to a civilized society," Restatement, Torts, Second, Section 46, comment d, is a genuine issue of material question of fact. Therefore, the Defendants' Motion for Summary Judgment on this Count must be denied, without prejudice.

## VI.

■ In addressing the claims under Count V of the Complaint, the Defendants deny, *inter alia*, that Berberick or Castleman were grossly negligent or owed a special duty to Kamara and Courtney, whom the Plaintiffs contend were abandoned in the parking lot. M.C.L.A. § 750.135 reads as follows:

Any father or mother if a child under the age of 6 years, or any other person who shall expose such child in any street, field, house or other place, with intent to

---

**8.** Complaint, Count III, paragraph 36.

**9.** W. Prosser and R. Keaton, *Prosser and Keaton on the Law of Torts,* (5th edition 1984).

**10.** Plaintiff's Brief in Objection to Motion for Summary Judgment at 16.

injure or wholly abandon it, shall be guilty of felony, punishable by imprisonment in the state prison of not more than 10 years.

It is clear from the statutory language that this statute does not apply to either of the minors in this case for several reasons. First, and foremost, M.C.L.A. § 750.135 is a criminal statute. Unless the Plaintiffs can establish that they have a private right of action under the provisions of this statute, their claim of abandonment must fail.

Second, M.C.L.A. section 750.135 is inapplicable to Kamara, a 15 year old youngster at the time of the incident, because the statute restricts the protected subject to "a child under the age of 6 years."

Third, in *Shannon v. People,* 5 Mich. 71 (1858), the Michigan Supreme Court examined the statutory language of M.C.L.A. § 750.135 and determined that the offender must be the father, mother, or an individual to whom the child was "confided". Whether or not the child was "confided" was a question of fact for the jury. *Id.* at 82.

In an attempt to provide some practical application to the "expose ... with intent ... to wholly abandon" language within M.C.L.A. section 750.135, the *Shannon* court (1) decided that "abandon" meant "to leave without intention to return to, to renounce all care or protection of." *Id.* at 89, and (2) announced the test for defining "expose" (or "exposure") within the meaning of the statute to be as follows:

> [If] the child be left at such a time, in such a place, and under such circumstances, as would render a parent, or other person (to whom it is confided) of ordinary prudence and humanity, reasonably apprehensive of such injury to the child, then the hazard may be said to exist, and it is an exposure within the statute." *Id.* at 92.

Even if the statute is applicable to Courtney, the facts do not support her claim of abandonment by the officers inasmuch as she had been left in the presence of Kamara. She was not left alone to perish. Although it is shocking to this Court that the officers would leave two minors in an area that was unfamiliar to either of them and subject them to unknown dangers, it is clear that there was no abandonment here as defined by *Shannon.* Hence, this aspect of the Plaintiffs' claim must be dismissed.

▆ The Plaintiffs have also charged the individual Defendants with willful and wanton misconduct. In order to sustain an action for this claim under Michigan law, a claimant must establish the following elements:

> (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

*Thomason v. Olive Branch Masonic Temple,* 156 Mich.App. 736, 742, 401 N.W.2d 911 (1986), citing *Gibbard v. Cursan,* 225 Mich. 311, 322, 196 N.W. 398 (1923). This test was further clarified in *Burnett v. Adrian,* 414 Mich. 448, 326 N.W.2d 810 (1982), in which the court held that "willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.* at 455, 326 N.W.2d 810.

In this case, the officers knew that Kamara and Courtney (1) had only twenty cents in their possession when they were left alone in the parking lot, (2) lived a significant distance from the scene of the arrest, (3) were unfamiliar with their surroundings, and (4) did not know of anyone who would be able to pick them up.

Moreover, it would have been possible for one of the officers to have called for additional support personnel, remained in the area with the children until suitable arrangements had been made to get home safely, or taken them into protective custody.

Applying the *Gibbard* and *Burnett* tests to the instant cause, this Court concludes that the elements of willful and wanton misconduct have been satisfied because, when viewing the evidence in a light that is most favorable to the Plaintiffs, the Defendants exhibited an indifference as to whether harm would result to the children.

With regard to the Plaintiffs' claim of gross negligence, this Court finds that the elements of this allegation have not been sufficiently set forth in the Complaint. Under Michigan law, gross negligence occurs only when a defendant knowingly and negligently injures another who had already acted in a negligent manner. *Hill v. Guy,* 161 Mich.App. 519, 523, 411 N.W.2d 757 (1987) citing *Gibbard,* 225 Mich. at 319, 196 N.W. 398, *Burnett,* 414 Mich. at 454, 326 N.W.2d 810. In this particular case, the Plaintiffs did nothing to put themselves in a position of danger. Therefore, since the Defendants could not have been subsequently negligent under the circumstances of this case, the Plaintiffs' claim of gross negligence must be dismissed.

### VII.

As a final matter, the Defendants have moved for sanctions under *Fed.R.Civ.P.* 11, contending that the Plaintiffs' counsel should have known that her clients were without any actionable civil rights claim. As is evident from a reading of this Order, this Court has determined that the Plaintiffs have asserted a series of viable claims against the Defendants. Hence, this request for sanctions must be denied.

### VIII.

In summary, this Court will grant in part and deny in part the Defendants' Motion to Dismiss and/or for Summary Judgment for the reasons that have been set forth hereinabove.

IT IS SO ORDERED.